[Crim. No. 9.   Fourth Appellate District.—December 11, 1929.]

THE PEOPLE, Respondent, v. JOE COLLINS, Appellant.

R. E. Hodge and Frank T. Bates for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

SLOANE, P. J.—This is a criminal action brought in the county of San Bernardino against the defendant Joe Collins on the charge of maintaining a common nuisance under the Volstead Act.

The information charges that the said Joe Collins, on or about the twenty-sixth day of May, 1929, and prior thereto, in the said county of San Bernardino, state of California, did wilfully and unlawfully maintain a common nuisance, to wit, a certain building located in the city of Needles, in said county and state, where intoxicating liquors were unlawfully kept and unlawfully sold and kept for sale, said intoxicating liquor containing one-half of one per cent or more of alcohol by volume and being fit for use for beverage purposes. Defendant was found guilty and convicted before a jury, and the appeal was taken from the judgment rendered on the verdict and from the order of the court denying defendant's motion for a new trial.

Appellant assigns as grounds for reversal of the judgment and order of the court:

(1) That the information fails to state the commission of a public offense because of uncertainty.

(2) That the evidence as a whole does not establish or support the verdict of guilty of the maintenance of a nuisance as defined by law and the act in question.

(3) The evidence does not establish sufficient connection between the offense charged and the property described and the defendant.

(4) Errors of law resulting from rulings of the court of such character as to deprive the defendant of a fair trial.

(5) Misconduct of the district attorney during the course of the trial affecting the substantial rights of the defendant,

(6) Refusal of the court to grant a certain instruction submitted by the defendant.

■ The point made as to the insufficiency of the information is that it does not sufficiently designate and describe the premises where the nuisance in question is alleged to have been maintained. It is true that the particular location of the offense charged might have properly been more specifically set out. It is only designated in the information as "a certain building located in the City of Needles, said County and State." This seems to be sufficient under section 959 of the Penal Code. This section provides that "the indictment, information or complaint is sufficient if it can be understood therefrom (4) that the offense was committed at some place within the jurisdiction of the court, except where the act, though done without the local jurisdiction of the county, is triable therein."

Appellant points out no specific requirement for any different rule in the matter of prosecution for nuisance than would apply to any other offense. This is a personal action, and not one which affects the property where the nuisance is alleged to have been committed. All that would seem to be required is that the defendant should be informed of the venue of the offense sufficiently to enable him to prepare his defense, and to protect him from further prosecution for the particular offense charged.

Section 960 of the Penal Code declares that "no indictment, information or complaint is insufficient, nor can the trial, judgment or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not tend to the prejudice of a substantial right of the defendant upon its merits."

It is quite apparent that the defendant, in preparing his defense, had no difficulty in locating the precise building referred to in the information.

In *People* v. *Mazzola,* 80 Cal. App. 583 [251 Pac. 222], this language is used: "It is also urged by appellant that the information is defective in that it fails to state the particular place in the county of San Bernardino where the alleged offense was committed. But it appears that such a statement is unnecessary. (*People* v. *Geiger,* 116 Cal. 441 [48 Pac. 389]; *People* v. *Sheldon,* 68 Cal. 434 [9 Pac. 457]; *People* v. *Wooley,* 44 Cal. 494; *People* v. *Eveart,*

1 Cal. Unrep. 217; *People* v. *Redman,* 39 Cal. App. 566 [179 Pac. 725]; *People* v. *Burke,* 18 Cal. App. 72 [122 Pac. 435].)''

In *People* v. *Burke,* 18 Cal. App., at page 81 [122 Pac. 440], discussing the point raised here of indefiniteness as to the precise location of the crime, the court says: ''Looking at the matter in its practical aspect, it is manifest that no substantial right of the defendant was invaded or imperiled. He knew whether the offense charged was committed by him in any part of Sonoma county. This knowledge would enable him to prepare and present his defense. And, as far as any future prosecution is concerned, the indictment would protect him in his answer to any charge of the same offense committed at the time set forth at any place, within the jurisdiction of said superior court. If there should be any doubt as to this, his plea 'of once in jeopardy' could be supported by extraneous evidence to identify the particular offense for which he has been tried and thus he would be amply protected.''

As to the sufficiency of the evidence to support the verdict and judgment, we do not deem it necessary to review the testimony in detail. The entire transcript has been carefully read, and the impression left thereby is that there was ample evidence to justify the verdict of the jury, both as to the maintenance of the building in question as a place where intoxicating liquors were unlawfully kept and unlawfully sold, but also in support of the allegation that the defendant was at the time of his arrest on or about the twenty-sixth day of May and prior thereto, in charge thereof and maintaining the same. It is true, as defendant complains, that the witnesses for the prosecution were all officers of the law, M. J. Jenkins being a police officer of the city of Needles and a deputy sheriff of the county of San Bernardino; Jerry Davis an investigator for the sheriff of San Bernardino County; John Alles a federal prohibition agent; C. F. Smithson a special officer for the Santa Fe Railroad, who lived in Needles; C. C. Poe a deputy sheriff of San Bernardino County, and J. A. Larson deputy sheriff of San Bernardino County; Emmons Arnold special agent for the Santa Fe Railroad and deputy sheriff of San Bernardino County, and J. H. Lucas a constable, and J. E. Farley a deputy sheriff. Two or three of these witnesses testified to

being present on the night of May 26th when the house was raided and the defendant arrested, and stated that the defendant was present and came to the door, and on being notified that the visitors were officers of the law, immediately ran from the front door back into the kitchen, where he was detected in pouring liquor from a pitcher into the kitchen sink. Portions of this liquor salvaged by the officers, proved to be alcoholic liquor, containing as high as forty per cent in volume of alcoholic content. There was other evidence of the presence of intoxicating liquor, in the way of jugs and demijohns, whisky glasses and other paraphernalia, empty at the time, but bearing the odor of whisky. The witness Jenkins stated that he had been in the house in the month of December, 1928, and on several other occasions within a year prior to May 26th, and on each occasion he found bottles, jugs, funnels, etc., on the premises bearing the odor of liquor, and on the 16th of September, 1928, he saw a man coming from the house, who, on the approach of the officer, broke two pint bottles of whisky which he was carrying, on the water meter on the premises. He also testified that at other times he had arrested people immediately after they came out of the house, who either had liquor in their possession, or were in a drunken condition, and that between May 26, 1928, and 1929, he had been in the house at least five times when the defendant was there present and apparently in possession.

Jerry Davis testified that in January, 1929, he bought whisky from the defendant at this place; that there were three or four in the house besides himself, and that he bought a round of drinks for everybody, including himself, and that then one of the other parties bought a round from the defendant before he left, and that they were served by the defendant in person. John Alles testified that in the early part of 1929 he visited this house in company with another investigator and bought four drinks of whisky there and a pint of whisky. The defendant was not present on this occasion and the liquor was served by some other party. His only information at that time that this was defendant's house was from hearsay.

C. F. Smithson testified that he was on the premises in September, 1928, and saw there a man by the name of Barbour, who poured something down the sink which

smelled like whisky. On another occasion in the same month he saw some liquor in a pitcher. He testified that he 'had seen several intoxicated persons around the place, and that he often saw the defendant in and about the house.

C. C. Poe testified that the defendant had lived in this particular house for eighteen months or two years; he had seen drunken people come from the house. On the evening of May 26th he tasted some of the liquor taken from the sink and declared that it was whisky. Asked how he knew that the defendant Collins lived in this particular house, he stated that he knew it from seeing Collins there, and that he had Collins' word for it. The defendant had once told him it was his place.

It was testified to by several witnesses that this place was commonly reputed to be occupied by the defendant; that he was frequently there, and that it was a customary thing for persons associated with, or having business with the defendant when they wanted to see him to look for him at this place; that he kept an automobile in a garage adjoining the house in question; that he was frequently seen sitting on the porch there. While defendant himself denied that he was in possession of or maintaining this house, he admitted that he had a key to it, and was exercising a general oversight of it, in the absence of the owner; that he had a key to it in the absence of the owner on and some time prior to the date of the raid and the arrest. His own testimony that he dropped around there frequently to see that the premises were not being invaded by trespassers or otherwise interfered with indicates that he considered himself for the time being the custodian of this house. While a good deal of the evidence was circumstantial, it can scarcely be doubted, taken in its entirety, that whatever business was being maintained there, was carried on by the defendant.

Counsel for defendant does not dispute that there was evidence before the jury that this place was being maintained for the illegal sale of intoxicating liquor and that the defendant was in charge of the same. He admits that the evidence is more or less conflicting, but seeks to discredit the testimony in behalf of the prosecution on the ground that all of the witnesses for the state were officers of one kind or another, and that there is absolutely no evi-

dence of any witness whatever, or of any person other than officers, whom the testimony must show were in Needles, and at these premises, for the purpose of obtaining liquor, and at least part of them, for the stated purpose of arresting this defendant.

While it may be true that a certain degree of bias may be presumed on the part of arresting and prosecuting officers growing out of their zeal to justify an arrest, this is a matter which may be, and usually is, called to the attention of the jury, and in any event we have not yet reached a point where verdicts are to be discredited and set aside because based upon the testimony of officers of the law, and particularly in the matter of enforcement of the Volstead Act, there has not been noticed such a degree of zeal on the part of the state constabulary at large as to raise any presumption of perjury in sustaining public prosecutions. We are satisfied that the evidence was sufficient to sustain the verdict.

As to the specifications of error of law occurring at the trial, we do not think anything is shown that was prejudicial to the defendant. There were some questions and comments by the district attorney which were perhaps improper, but any prejudice that might have resulted from this source was removed by the voluntary rebuke of the court at the time, and by ample instructions to the jury to disregard these matters of misconduct on the part of the prosecution, to which exception had been taken.

Defendant's final specification of error is the refusal by the court to grant the following instruction: "You are hereby instructed that if you should believe from all the evidence beyond a reasonable doubt that there was found in the home or dwelling house of this defendant liquor containing more than one-half of one per cent of alcohol by volume, and that the same was fit for beverage purposes, such possession alone would not be sufficient to convict this defendant of the crime charged, to-wit, that of maintaining a common nuisance."

This instruction might properly have been given, and its refusal might be charged as error had not other instructions of the court incorporated the same rule. We think that the jury was fully informed by the instructions given, that the mere presence of prohibited liquor in the dwelling

occupied by defendant would not be sufficient evidence to justify his conviction of maintaining the place as a common nuisance.

Instruction No. 9 given by the court informs the jury "that mere possession of intoxicating liquors in one's house or place of business does not raise the presumption that such intoxicating liquor is possessed for the purpose of unlawful sale or disposition, nor does it raise the presumption that the place or establishment in which the liquor is kept is conducted as a common nuisance, or is maintained as a place for the unlawful sale of intoxicating liquor."

Instruction No. 7 as given contains the statement of the law as to what constitutes a common nuisance, and in this connection informs the jury that the word "kept" as used in this statute, means liquor "kept for sale or barter, or other commercial purpose." And that "while possession of intoxicating liquor in and of itself may be unlawful, unless the possession is coupled with the purpose of selling, bartering or other commercial uses, the offense of maintaining a common nuisance is not committed."

Instruction No. 10 also informs the jury that if they should believe from all the evidence "that there was one occasion when intoxicating liquors were either sold or given away by this defendant to be used as a beverage, such single act is not sufficient to constitute the crime of maintaining a common nuisance."

We deem the instructions taken as a whole quite favorable to the defendant and as covering all of the essential points necessary to fairly submit the case to the jury.

The judgment and order appealed from are affirmed.

Barnard, J., and Marks, J., concurred.