[Crim. No. 639. Fourth Dist. Apr. 17, 1946.]

THE PEOPLE, Respondent, v. LULA ROBINSON, Appellant.

Raymond E. Hodge and Duckwork, Mussell & King for Appellant.

Robert W. Kenny, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with the crime of pandering in that on April 17, 1945, she procured a place as an inmate in a house of prostitution for one Bertha Conway, a female person. She was found guilty by a jury and has appealed from the judgment which followed, and from an order denying her motion for a new trial.

The complaining witness was a white woman 21 years of age and married. On the morning of April 17, 1945, she met two colored men named Williams and Brooks at a bar in San Bernardino. She told Brooks she was looking for work as a waitress and Brooks told her of appellant's "ranch" and that appellant needed a girl for housekeeping work. This "ranch" was in the foothills a few miles north of Fontana. The appellant had recently moved there from a place she operated in Fontana. The house, which had about ten rooms, was not completely finished but it had six bedrooms which were furnished. The appellant also had a stock of liquor there, including 25 or 20 cases of beer. Williams and Brooks took the complaining witness to this place, arriving there shortly after noon. The appellant was not there when they arrived so they waited until she returned about three p. m. Mrs. Conway testified "they told her I was there seeking employment and introduced me to her and told her to be good to me and all of that and she taken me up and showed me my room." There is evidence that a fight occurred between Brooks and Mrs. Conway shortly after she was taken to her room; that

this ended in about 20 minutes when appellant's husband and Williams brought Brooks downstairs; that Mrs. Conway fell asleep and did not waken until after dark; that she then came downstairs and asked the appellant where she was; that at about 8:30 or 9 p. m. on that evening three unidentified white men arrived at appellant's house; that Mrs. Conway was not introduced to them; that after some drinks were had Williams took Mrs. Conway upstairs where they quarrelled until they were stopped by the appellant; that Mrs. Conway then first learned why she had been brought to appellant's place; and that, thereafter, the three white men in turn visited Mrs. Conway in her room. It appears that Mrs. Conway left the place the next forenoon with another man who had arrived during the night; that the appellant objected to her leaving but acquiesced when told Mrs. Conway was going to procure some clothes; that Mrs. Conway went back with Williams about a week later for the purpose of getting part of the money she had earned the night of the 17th; and that she received no money.

It is well settled that under the charge with which we are here concerned guilt is established if the evidence sufficiently shows that the defendant assisted or induced, or persuaded or encouraged the female in question to become an inmate of such a house. (*People* v. *Montgomery*, 47 Cal.App. 2d 1 [117 P.2d 437].)

The appellant earnestly contends that the evidence is not sufficient to support the judgment because it fails to show that Mrs. Conway engaged in prostitution on this occasion; that she did so with the acquiesence, consent or knowledge of the appellant; and that the appellant's house was being used as a house of prostitution at the time in question. With respect to the question as to whether prostitution was practiced at all it is argued that the only proof thereof consists in the testimony of Mrs. Conway; that it clearly appears that she was so intoxicated that she did not know what was going on and therefore her testimony may not be accepted; that the evidence indicates that no money was paid since Mrs. Conway admits that she did not demand a part of it before she left the next morning; and that, in any event, Mrs. Conway directly testified to an act of intercourse with but one man, which does not constitute an act of prostitution.

The evidence is conflicting with respect to the degree of intoxication on the part of Mrs. Conway, as it is on many

other matters. While there is evidence that she was quite intoxicated when the appellant arrived about three p. m. and when she was taken to her room, the appellant's husband testified that at that time "she seemed to be a little intoxicated, but not very bad." Moreover, there is no evidence of intoxication on her part some six or seven hours later, after she had been asleep and when the acts in question are alleged to have occurred. The question of intoxication, like other material questions here, was one of fact for the jury.

■ With respect to the acts of prostitution it appears that after the three men arrived during the evening, to whom Mrs. Conway was not introduced, she was taken to her room by Williams and another quarrel ensued. She testified that Williams told her that she knew why she had come to the place; that he threatened her; and that "then he made me agree to go ahead and do it and I did it"; that while they were quarreling the appellant came in and told Williams that there were "three customers" downstairs and that "they were going to leave if we didn't break it up"; that the appellant was present when Williams told Mrs. Conway why she had been brought to the place; and that after Williams left the appellant "told me that I could stay there and do that and give her half or I could pay her so much for the room." She then testified that the three men downstairs came to her room, one after another, but were not present at the same time; that she had sexual intercourse with the first man for which she received $10; that after this man left she was visited by the other two men, in turn, each of whom paid her $10; that after the three men left she went downstairs and talked with the appellant; that the substance of her conversation with the appellant was "that I would give her the money and she would split it with me at the end of the week"; and that she gave the appellant the $30 she had received from the men and returned to her room. The argument that this evidence fails to show acts constituting prostitution is based on the fact that Mrs. Conway specifically mentioned an act of sexual intercourse only with the first man, and that she did not directly testify as to such an act with either of the other two. The appellant had referred to these men as "customers," Mrs. Conway testified that each of them visited her room separately, and that each paid her $10. This evidence, with the reasonable inferences therefrom, is entirely sufficient to support the finding and conclusion that acts of prostitution

occurred at this time and place. It may be said here as was said in *People* v. *Hirsch*, 21 Cal.App. 737 [131 P. 1062], under somewhat similar circumstances, ''Manifestly, he did not go to bed with her for the purpose of saying his prayers.''

Aside from several other matters which need not be mentioned, the evidence to which we have referred is entirely sufficient to show knowledge and consent on the part of the appellant, and that she assisted and encouraged Mrs. Conway in these acts of prostitution.

■ It is next contended that the evidence is not sufficient to show that this house, occupied by the appellant, was used as a house of prostitution at the time in question. There is ample evidence that it was so used on this occasion with the knowledge and consent of the appellant. The evidence above referred to is material on this point. In talking with Mrs. Conway, the appellant referred to the three men downstairs as ''customers,'' and the only reasonable inference is that she wanted them to visit the complaining witness. Although the house was not fully completed the bedrooms were completed and furnished. The appellant testified that she did not run a hotel; that she rented rooms at times but did not ''rent them out weekly''; and that Williams had been a customer at her other place. When asked as to whether it was customary for colored men to come to her place with white women she replied: ''Not at that place but at other places it was.'' Three men, who were unknown to the complaining witness, were sent to her room, with the consent and assistance of the appellant. There was evidence that two other men came to the house much later on the night of April 17, and when appellant was arrested on April 30, two other women were seen in the house, one colored and one white. However, the appellant admitted that three other girls were in the house at that time. A deputy sheriff testified that the appellant was commonly reputed to have operated a house of prostitution. This last testimony is attacked by the appellant because, on cross-examination, the officer admitted that he knew of the reputation of this particular house only for a period of two months following April 30, 1945. Not only does this affect the weight of the testimony but the matter of reputation is only one way of proving that a house is being operated as a house of prostitution. Taking all of the evidence into consideration, including significant statements made by the appellant herself, it cannot be held that the evidence is not sufficient in this regard.

■ Finally, the appellant contends that the court committed prejudicial error in permitting certain questions to be asked of and answered by a deputy sheriff. Having testified that he did not know the appellant personally, he was asked "Do you know whether she has been charged previously with similar offenses?" An objection was made and before it was ruled on, the following occurred:

"By Mr. Smith: Q. Do you have any records in the Sheriff's office to indicate it? A. Yes, sir.

"Q. Have you got them with you? A. Yes, sir.

"Q. Where are they? A. Right here.

"Q. You are holding in your hand right now a book——

"Mr. Hodge: Let me see what it is.

"By Mr. Smith: Q. Is this from the County jail records? A. Yes, sir."

The first improper question was not answered and no request to strike it was made. When the questions were asked about the records the officer was holding there was no objection by appellant's counsel but a request to see "what it is" was made. Apparently, these were preliminary questions going to the point whether or not the witness was familiar with the general reputation of the appellant and her house. Nothing further was done and it does not appear that the contents of any records were disclosed to the jury. Neither proper objections nor motions to strike were made and no definite specification of error is here made. The court later instructed the jury to be careful not to regard any statements which had been made in their presence on either side, and to look entirely to the evidence received in determining the facts. Under the circumstances here shown, no reversible error appears in this connection.

The judgment and order appealed from are affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 16, 1946.