[Crim. No. 4299.    Second Dist., Div. Two.    Apr. 12, 1949.]

THE PEOPLE, Respondent, v. MARIE MITCHELL, Appellant.

John J. Bradley and Max Solomon for Appellant.

Fred N. Howser, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

MOORE, P. J.—Having been convicted of the crime of attempted pandering (Stats. 1911, p. 9; 1 Deering's Gen. Laws, Act 1906*) defendant now demands a reversal of the judgment on the grounds that (1) the evidence is insufficient and (2) the time for pronouncing judgment was extended beyond the 30 days allowed by the Penal Code. (§ 1191 as amended, 1947; Stats. 1947, ch. 1178.)

The facts established are that Sergeant Stokes of the Los Angeles Police Department placed the residence of appellant in the western part of Los Angeles under observation from the first week in April to May 5, 1948. He watched it assiduously every working day. Sometimes after his observations in the early evening he would return during the early morning. His definite discoveries were that appellant resided there; several girls stayed with her; at times some of them would disappear while others would succeed them; they came in the early evening and departed after midnight. During the month, about 100 different men came and went. Some made return visits. Four of the women were seen to engage in sexual intercourse with the male visitors in lighted rooms. The drawn shades were left sufficiently ajar to permit the observations. On one occasion a motorist parked his car 25 yards from the entrance but entered through the front door. The sergeant thereupon peered through the window, saw appellant go into a bedroom and leave as the recent arrival and a woman entered and engaged in a sexual act. On the

*1 Deering's California General Laws, Act 1906, page 885.

"Any person who shall procure a female inmate for a house of prostitution, or who, by promises, threats, violence, or by any device or scheme, shall cause, induce, persuade or encourage a female person to become an inmate of a house of prostitution, or shall procure for a female person a place as inmate in a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state, or any person who shall, by promises, threats, violence or by any device or scheme, cause, induce, persuade or encourage an inmate of a house of prostitution or any other place in which prostitution is encouraged or allowed to remain therein as such inmate, or any person who shall, by fraud or artifice, or by duress of person or goods, or by abuse of any position or confidence or authority, procure any female person to become an inmate of a house of ill-fame, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution, or who shall receive or give, or agree to receive or give, any money or thing of value for procuring, or attempting to procure, any female person to become an inmate of a house of ill-fame within this state, or to come into this state or leave this state for the purpose of prostitution, shall be guilty of a felony, to wit: pandering, and upon conviction for an offense under this act shall be punished by imprisonment in the state prison for a period of not less than one year nor more than ten years."

evening of May 4, 1948, the sergeant saw appellant enter a bedroom, place a pillow on the bed and withdraw, whereupon a man and a woman occupied the bed and engaged in copulation. At that juncture the sergeant and two other police officers moved in to find the disrobed couple standing in the same bedroom with appellant and a female companion near by but outside the room.

## A House of Prostitution as a Factor

■ Prostitution is defined to be the common, indiscriminate, illicit intercourse of a woman for hire. (*People* v. *Marron*, 140 Cal.App. 432, 434 [35 P.2d 610].) A house of prostitution, therefore, is one in which the prostitute plies her trade.

■ Appellant contends that evidence of the existence of quarters in a house of prostitution ready for the intended victim is essential to the proof of attempted pandering and that this feature of the corpus delicti was not established. While no authorities can be found to support such thesis (see *People* v. *Benenato*, 77 Cal.App.2d 350, 357 [175 P.2d 296]) the evidence in the case at bar amply proved the readiness of quarters in a bawdy house. Such evidence is not confined to the extrajudicial statements of appellant. Neither is direct or positive evidence essential to the proof, but circumstances may be shown from which the existence of such house may be inferred. (*People* v. *Hudson*, 139 Cal.App. 543, 546 [34 P.2d 741]; *People* v. *Wiezel*, 39 Cal.App.2d 657, 664 [104 P.2d 70].) The circumstances shown herein are the nocturnal visits to the house of appellant by some 100 strange men over a period of 30 days, the presence there of strange women, four separate acts of prostitution, some of which were arranged for by appellant. These facts in connection with the testimony of the sergeant furnish ample support for the finding that a house of prostitution was maintained by appellant and warranted receiving in evidence appellant's extrajudicial statements. (*People* v. *Van Scoyoc*, 25 Cal.App.2d 416, 418 [77 P.2d 485].)

## The Overt Acts

The appellant next contends that the evidence is insufficient to establish the overt act essential to the crime of attempted pandering. ■ Pandering is established when the evidence shows that the accused has succeeded in inducing his victim to become an inmate of a house of prostitution. (*People* v. *Robinson*, 74 Cal.App.2d 80, 82 [167 P.2d 778].) ■ Attempted

pandering is proved by evidence of the acts of the accused which have failed to accomplish the actor's purpose by reason of its frustration by extraneous circumstances rather than by virtue of a change of heart on the part of the one who made the attempt. (Pen. Code, § 663*; see *People* v. *Grubb*, 24 Cal. App. 604, 608 [141 P. 1051].)

The overt acts of appellant were clearly established by the testimony of a policewoman. She testified that during April, 1948, in pursuit of her official duties she had occupied quarters in a hotel on Hollywood Boulevard. About 2 o'clock p. m. on May 2, she was called on the telephone by appellant who stated that she had heard that the witness was out of employment, requested the latter to visit her to discuss a business proposition and inquired whether the witness had worked in Los Angeles or in "a house" anywhere. Pursuant to appointment then made, Miss Davis visited appellant's house about an hour after their telephonic contact. While they sat in the living room, appellant told the witness that she had worked in Los Angeles about 12 years, had four girls working for her at night; that each made about $100 nightly, one-half of which was paid to appellant; while she could guarantee nothing, she had been arrested 18 times, but had "never done any time"; for each trick in her house a girl was paid "$20 and up"; however, financial matters were never mentioned by the girls, but were handled by appellant. While the witness was there awaiting the arrival of a taxicab, appellant admitted a man and escorted him downstairs. She promptly returned to Miss Davis and asked the latter to accommodate the "old customer"; he was a "$30 trick" which meant "$15 quick" for Miss Davis. The latter tactfully excused herself.

Pursuant to arrangement then made, appellant telephoned Miss Davis at 11:30 a. m. on May 3 and advised the latter that she had seen the doctor; that he would see the witness "for sure the next day"; that the latter could begin at 1 p. m. on the 4th when one of her girls was sure to quit; but if the latter should leave the night of the 3d instead of the morrow, Miss Davis could go to work at once. When the witness attempted to reach appellant by telephone on the evening of May 3 she was informed that appellant was not at home.

---

*Penal Code, section 663. "Any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was perpetrated by such person in pursuance of such attempt, unless the court, in its discretion, discharges the jury and directs such person to be tried for such crime."

Such testimony when believed and reasonably interpreted amply warrants the implied finding that appellant committed overt acts which completes the proof of the crime charged. It is sufficient if the overt acts reach far enough toward the accomplishment of the intended offense to amount to the commencement of its consummation. Thus the crime of attempted pandering is demonstrated. (*People* v. *Petros,* 25 Cal.App. 236, 244, 245 [143 P. 246] ; *People* v. *Grubb,* 24 Cal.App. 607, 608 [141 P. 1051].) *People* v. *Matsicura,* 19 Cal.App. 75 [124 P. 882], is no authority on the crime here charged. The defendant there was accused of pandering, the consummated crime. Because the facts there were insufficient to substantiate the accusation it does not follow that the evidence in the instant case is likewise insufficient.

█ Appellant contends that in order to establish the crime of attempted pandering the prosecution must prove a scheme, promise, device or violence. Such evidence has been held to be unnecessary to prove pandering. (*People* v. *Snyder,* 36 Cal. App.2d 528, 531 [97 P.2d 976] ; *People* v. *Cimar,* 127 Cal.App. 9, 14 [15 P.2d 166, 16 P.2d 139].) Therefore inasmuch as such proof is not necessary to establish the crime of pandering it follows as a logical sequitur that it is not essential to the proof of attempted pandering.

### TESTIMONY OF PEOPLE'S WITNESSES NOT INCREDIBLE

Appellant specifies some particulars in the testimony of Officers Stoker and Davis which she contends to be inconsistent with other portions of their testimony. Also, she points to certain statements and acts of the witnesses which she maintains renders the testimony of both witnesses incredible. Such comments are of no value. █ The trial court is privileged to disregard any inadvertences or contradictions in the testimony of a witness while adopting other statements made by him. Whether a witness is prejudiced against the accused or is biased in favor of the prosecution and whether either affects the testimony given is to be determined by the trier of facts. It is strictly the function of the trial court to determine to what extent it will believe or disbelieve testimony. It may rely upon a witness who has falsely testified in part (*Robinson* v. *Robinson,* 159 Cal. 203 [113 P. 155]) or whose testimony contains contradictions or inconsistencies. (*Bitsekas* v. *Parechanian,* 67 Cal.App. 148 [226 P. 974] ; *Hansen* v. *Bear Film Co.,* 28 Cal.2d 154, 184 [168 P.2d 946].) Because

a witness may give color to his testimony favorable or antagonistic to one side of a controversy he is not thereby disqualified. It is the judicial function to glean the truth from all the proof, to weigh it, to determine which is incredible and to appropriate that which is worthy of belief. Because police officers are engaged in the task of uprooting a vicious evil in a metropolitan area they do not necessarily lay aside their sense of honor and strive only to register a success. ■ The court below having adopted the testimony of the officers, drawn its inferences and derived its conclusion, the fruits of its labors cannot be discarded by reviewing courts upon the plea that one feature of a witness' testimony is contradicted by inferences from his own testimony or by the testimony of another witness. (*People* v. *Fremont*, 47 Cal.App.2d 341, 349 [117 P.2d 891]; *People* v. *Collins*, 102 Cal.App. 527, 533 [283 P. 129]; *People* v. *Ferello*, 92 Cal.App. 683, 686 [268 P. 915].) Such conflicts do not render testimony inherently improbable. (*People* v. *Chaddock*, 2 Cal.App.2d 643, 645 [38 P.2d 473]; *People* v. *Becker*, 140 Cal.App. 162, 165 [35 P.2d 196].) The only bases for the total rejection of any testimony are (1) its apparent falsity without resorting to inference or deduction or (2) its physical impossibility. (*People* v. *Campbell*, 80 Cal. App.2d 798, 800 [182 P.2d 626]; *People* v. *Weatherford*, 78 Cal.App.2d 669, 672 [178 P.2d 816].) Neither basis is found in the testimony of the two officers. The quibbles of appellant concerning the failure of Miss Davis to obtain the name of appellant's physician, the want of corroboration of her testimony as to her conversations with appellant, her failure to obtain the name of the "mutual friend" mentioned by appellant over the telephone at her first call, the asserted conflict of Miss Davis' testimony with the records of a telephone exchange through which appellant claims to have received her calls, and other such matters were disposed of by the court's impliedly finding either that they were nonessentials or that they were overbalanced by explanations of the officers.

### FRUSTRATION OF APPELLANT'S PLAN

■ Appellant contends that her "alleged arrangements" with Miss Davis were defeated by her own refusal to accept the telephone call from the officer on May 3 or to arrange thereafter for a medical examination of the latter. There is no evidence that appellant withdrew her offer to make Miss Davis an inmate of her house. Their agreement at their last conversation was that Miss Davis should begin work on May 4

and that was not dependent upon further telephonic conversation.  Miss Davis' attempt to reach appellant in the evening of May 3 was for the purpose of advising the latter whether she would come to work that very night.  On the testimony of Miss Davis that she rejected appellant's invitation to engage in an act of prostitution in the latter's house on May 2 and that she declined to report for work on May 4, the court was justified in finding that only thereby was the crime of pandering averted.

### POSTPONEMENT OF SENTENCE NOT PREJUDICIAL

The final assignment of error is that "the court failed to pronounce sentence in accordance with the provisions of section 1191 of the Penal Code"* resulting in a miscarriage of justice.  While conceding that such failure to pronounce judgment within the limitation of section 1191 did not automatically entitle appellant to a new trial, she argues that the effect of deferring the pronouncement of judgment until after the hearing on her application for probation on September 8 resulted in injury to her cause.  Such prejudice, she insists, flowed from the fact that within 20 days  after the court's announcement of finding her guilty of attempted pandering she was compelled to stand trial on the charge of having in May, 1948, operated a house of prostitution, a misdemeanor, and was convicted and sentenced to serve six months' imprisonment.  She maintains that since such misdemeanor was necessarily included in the felony conviction, it would have been dismissed had judgment herein been pronounced within 20 days after the court's announcement of her guilt.  There is nothing in the record from which such a conclusion could be reasonably derived.  No law is cited and none has been discovered to the effect that such misdemeanor is necessarily included in the felony of attempted pandering.  Nor is any reason advanced why the municipal court should or would dismiss a pending action by reason of another court's having pronounced judgment against the same defendant for a different crime.  At the time of the continuance of the matter to the September date for sentence, appellant knew of the pendency of the other charge.  With such knowledge it was incumbent upon her to advise the court of her anticipated prejudice so that other arrangements might be made to avert it.  Neither an accused nor a convicted person may remain silent in the

---

*[1947, chap. 1178, section 1.]

face of a ruling and thereafter assert error by reason thereof. No prejudice is shown to have resulted from the delay in pronouncing sentence.

The judgment and the order denying the motion for a new trial are affirmed.

McComb, J., and Wilson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 9, 1949.