[Crim. No. 5025. In Bank. Sept. 7, 1950.]

In re MARIE MITCHELL on Habeas Corpus.

John J. Bradley and Max Solomon for Petitioner.

W. E. Simpson, District Attorney (Los Angeles County), Jere J. Sullivan and Robert Wheeler, Deputies District Attorney, for Respondent.

SHENK, J.—By this proceeding in habeas corpus the petitioner is seeking her release from the custody of the sheriff of Los Angeles County. She alleges that her conviction was the result of perjured testimony on the part of members of the police department of the city of Los Angeles and that thereby her constitutional rights were unlawfully invaded.

The petitioner was convicted in September, 1948, of an attempt to commit the crime of pandering.* The trial was before the court without a jury. She was sentenced to the State Institution for Women at Tehachapi. She filed an application for probation which was granted on condition that she serve one year in the county jail. A motion for a new trial was denied. The judgment and the order were affirmed. (*People* v. *Mitchell,* 91 Cal.App.2d 214 [205 P.2d 101].) A hearing in this court was denied in May, 1949, and the petitioner commenced to serve her time in the county jail. In July, 1949, an investigation was in progress before the county grand jury involving certain members of the Los Angeles police department.

On July 7, 1949, Audrey Davis appeared before the grand jury and was subjected to direct and cross-examination concerning certain matters that had taken place during the course of the prosecution of the petitioner. She was a policewoman in the police department of the city of Los Angeles and was

*Stats. 1911, p. 9, provides, ''Any person who shall procure a female inmate for a house of prostitution, or who, by promises, . . . or by any device or scheme, shall cause, induce, persuade or encourage a female person to become an inmate of a house of prostitution, or shall procure for a female person a place as an inmate in a house of prostitution . . . shall be guilty of a felony, to wit: pandering . . .'' with punishment of not less than one nor more than ten years.

one of the principal witnesses on behalf of the prosecution against the petitioner. At the hearing before the grand jury she stated that she had sworn falsely at the petitioner's trial. She also stated that Charles Stoker had committed perjury at the trial and had influenced her to swear falsely. Stoker was a sergeant in the police department and was the officer to whom Audrey Davis was required to report in the performance of her duties.

After the testimony of Audrey Davis before the grand jury became known to her, the petitioner filed an application for a writ of habeas corpus in the District Court of Appeal, 2d Appellate District, basing her application upon the same grounds set forth in the present petition. That application was denied on August 3, 1949. On August 10th she filed her application for a writ of habeas corpus in this court and the writ was issued. Upon the return to the writ a reference was ordered. The Honorable William F. Traverso, judge of the Superior Court in and for the City and County of San Francisco, was appointed to take testimony bearing upon the following questions and to make findings of fact thereon:

1. Did any witness who testified at the trial of Marie Mitchell, also known as Brenda Allen, on the charge of attempted pandering, a felony, in action No. 119980 in the Superior Court, Los Angeles County, commit perjury as defined in section 118 of the Penal Code; that is, did any such witness give false testimony as to any material matter which he or she knew to be false?

2. In the event that any such witness so falsely testified, did any representative of the State of California responsible for the presentation of the testimony, including any police officer, cause or suffer such testimony to be introduced knowing that such testimony as given was false?

A hearing was held by the referee in Los Angeles on October 31, 1949. Witnesses were called including the petitioner and Audrey Davis on behalf of the petitioner and Sergeant Stoker on behalf of the respondents. Transcripts of certain testimony before the grand jury and at the petitioner's trial were introduced in evidence. On the basis of all of the evidence introduced, the referee made 14 specific findings of fact to the effect that the testimony of Audrey Davis and Charles Stoker given at the petitioner's trial was truthful. The answer to the first question was therefore in the negative and it became unnecessary to answer the second question. Following the

filing of the findings and report of the referee, the petitioner presented exceptions to the findings. The record before the referee and in turn the record before us in this proceeding consists of the petition for the writ; the respondent's objection to the issuance thereof; the transcript of the oral testimony taken at the hearing before the referee—covering 164 pages; the transcript of the testimony of Audrey Davis at the trial of the petitioner, and the transcript of testimony of Audrey Davis and Sergeant Stoker before the grand jury in July, 1949.

In order to understand the nature of the charge of perjury, it is necessary to relate in some detail the facts in support of the judgment of conviction and the testimony taken before the grand jury.

At the petitioner's trial Audrey Davis testified to the following effect: She was a policewoman who worked under the direction of Sergeant Stoker. Stoker told her that he suspected that prostitutes were living at a certain hotel and that he was suspicious of the management of the hotel. He instructed her to reside at the hotel and pose there as a prostitute to see if she could obtain information to substantiate his suspicions. He gave her the number of a telephone exchange service that he believed was being used by prostitutes generally and told her to try to become listed on that exchange. She established a residence at the hotel as directed and became acquainted with some of the people there. She attempted to subscribe to the telephone exchange service but was unsuccessful. After about three weeks, in the afternoon of May 2, 1948, the petitioner called her at the hotel, identified herself as Brenda Allen, and said she had a mutual friend who had given her Audrey Davis's telephone number. She said she understood that Audrey Davis was a prostitute who was out of work, and said she would like to talk over a business proposition with her. An appointment for an hour later was made. The petitioner gave Audrey Davis instructions as to how to reach her address and furnished her the petitioner's telephone number. This was the same number that Stoker had given her as the number of the telephone exchange service. Audrey Davis then telephoned Stoker and told him what had happened. Prior to that time Stoker had never mentioned the petitioner's name to Audrey Davis or said that his purpose was to obtain information about the petitioner. Stoker told Audrey Davis to see the petitioner according to her arrangement. He told her that he would also proceed to the

house and would hide outside in order to be available for assistance if trouble developed. Audrey Davis went to the petitioner's house and found her in her front yard flower garden. They went inside the house and engaged in conversation. The petitioner said she conducted a house of prostitution and gave various details of her operations. She questioned Audrey Davis about her experience and ability in that activity, and then told her she would arrange for a medical examination in order that she could start to work. The petitioner stated that she would telephone her the next day about 11 o'clock in the morning regarding the examination. The petitioner then called a taxicab by telephone for Audrey Davis. While they were waiting for the taxicab, an unidentified man called at the front door; the petitioner admitted him and escorted him to another part of the house. The petitioner returned and told Audrey Davis that the man was "an old customer" who was a "thirty dollar trick" and that if she wanted to make fifteen dollars quickly, she could "take the trick." The policewoman made excuses. The petitioner said that she had expected another girl to be available, and urged Audrey Davis to engage in an act of prostitution with the unidentified man. The taxicab arrived and Audrey Davis left, explaining that she had an appointment. On the next day about 11 o'clock in the morning, the petitioner again telephoned Audrey Davis. She said she was unable to have her see a doctor that day, but would arrange for an examination the next day. She told Audrey Davis that after the examination she could definitely start employment the next day at 1 o'clock in the afternoon. She also said that one of her girls might leave that night and if so Audrey Davis could begin work earlier. She asked Audrey Davis to telephone her about 8 o'clock in the evening to find out whether she should begin work earlier. Audrey Davis called several times, but each time was informed that the petitioner was not available.

According to the petitioner's allegations Sergeant Stoker testified at the trial that Audrey Davis called him and stated that the petitioner had called her by telephone; that he went to the petitioner's address and concealed himself across the street in some shrubbery before Audrey Davis arrived; that he saw Audrey Davis arrive, saw an unidentified man arrive later, and saw Audrey Davis leave.

Before the grand jury Audrey Davis testified that Sergeant Stoker had persuaded her to tell falsehoods at the petitioner's

trial in order to bolster his case against the petitioner. In particular she stated that she had testified falsely in saying that the petitioner had made the original telephone call to her. She said that she herself had made that call. She said that when the sergeant had given her the telephone number of the exchange service, he had informed her that it was the number used by the petitioner and had instructed her to use the number to call the petitioner in order to try to secure employment with her as a prostitute. She further testified that she did not call Stoker or anyone else to inform him that she was going to the petitioner's house, so that in her opinion Stoker was not telling the truth when he testified that he went to the house after receiving such a call. As to whether the petitioner called her on May 3, 1948, she stated that she could not recall. She also stated to the grand jury that she was formerly in love with Sergeant Stoker and for that reason had acceded to his request to bear false witness against the petitioner. She stated that she had more recently fallen out with Stoker and was now telling the truth. She did not, however, recant her testimony with reference to meeting the petitioner at the latter's house or the conversation that followed between the petitioner and herself at that time. She repeated her testimony as to those particular events in detail.

As a ground for her release from custody, the petitioner asserts that Audrey Davis falsely testified at the trial when she said, (1) that she was called by telephone originally by the petitioner on May 2d, (2) that she telephoned Stoker before visiting the petitioner on May 2d, (3) that she had never discussed the petitioner with Stoker before May 2d, (4) that the petitioner urged her to engage in prostitution while at her house on May 2d, and (5) that the petitioner again called her on the morning of May 3d. The petitioner also alleges that Stoker testified falsely at the trial when he stated that he had not mentioned the petitioner to Audrey Davis prior to May 2d; that he received the telephone call from Audrey Davis on May 2d; and that he stationed himself outside the petitioner's house on May 2d after receiving such a call and saw persons arriving.

Evidence on these issues of fact was taken at the hearing before the referee. Audrey Davis was called on behalf of the petitioner. She refused to answer pertinent questions on the ground that the answers would tend to incriminate her and she was excused. Charles Stoker, called on behalf of respondent, testified to the truth of his testimony at the

petitioner's trial and denied that he had done anything to influence Audrey Davis to testify falsely at the trial. Stoker's testimony before the grand jury was introduced in evidence. In his testimony there, Stoker also asserted the truth of his testimony at the trial and denied influencing Audrey Davis's testimony. As to Audrey Davis's motive for changing her testimony, Stoker testified before the grand jury that Audrey Davis's friendship for him had abruptly ended when her father arrived in the city. He testified that her father was a former police officer and a close friend of several members of the Los Angeles police department who were being investigated by the grand jury and about whom Stoker had earlier given damaging testimony.

The petitioner did not testify at her trial but she did testify before the referee. She denied making the original telephone call to Audrey Davis, but admitted talking to her twice on the telephone and admitted that she had had a personal interview with her at her house. She denied having any conversation with Audrey Davis over the telephone or in person about prostitution and denied in particular having urged Audrey Davis to engage in an act of prostitution while at the petitioner's house.

As stated, the referee found against the petitioner as to every item of asserted perjury, and the petitioner excepted to the findings. It was conceded at the hearing on the exceptions that if the testimony of Audrey Davis and Charles Stoker at the trial of the petitioner be found to be false with respect to any essential facts, their action would constitute state action as contemplated by the authorities. (*Mooney* v. *Holohan,* 294 U.S. 103, 112 [55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406] ; *In re Mooney,* 10 Cal.2d 1 [73 P.2d 554] ; *In re Lindley,* 29 Cal.2d 709, 722 [177 P.2d 918] ; *In re De La Roi,* 27 Cal.2d 354 [164 P.2d 10].) The exceptions to the findings were on the ground that they lacked support in the evidence or were contrary to it.

Although this court is not bound by the findings of fact made by the referee, his findings are entitled to important consideration. The referee "had an opportunity to observe the demeanor of those who appeared before him and to weigh what they said in connection with their manner on the witness stand." (*In re De La Roi,* 27 Cal.2d 354, 364 [164 P.2d 10].) In the present proceeding, however, it is not necessary to rely solely on the credence given particular testi-

mony by the referee. An independent review of the record not only justifies but impels the conclusion that the petitioner has not sustained the burden of proof required of her in order to set aside the judgment of conviction. (See *In re Lindley,* 29 Cal.2d 709, 722 [177 P.2d 918].) ■ The petitioner must show by a preponderance of substantial, credible evidence that perjured testimony was knowingly presented by the prosecution (*In re Mooney,* 10 Cal.2d 1, 15 [73 P.2d 554]), and that such testimony established an essential element of her conviction. (See *In re Lindley, supra,* 29 Cal.2d 709, 722; *In re De La Roi,* 28 Cal.2d 264, 269 [169 P.2d 363]; *In re De La Roi, supra,* 27 Cal.2d 354, 365; *In re Egan,* 24 Cal.2d 323, 335 [149 P.2d 693]. *Cf. Lisenba* v. *California,* 314 U.S. 219, 236-237 [62 S.Ct. 280, 86 L.Ed. 166].) This she has failed to do.

■ The crucial testimony at the petitioner's trial was Audrey Davis's testimony concerning the meeting and conversation with the petitioner at her house on May 2, 1948. That evidence was sufficient alone to convict the petitioner. It was referred to by the trial judge when he orally rendered his decision.* This testimony was not recanted by Audrey Davis. Its truthfulness must be deemed to have been established by the judgment of conviction and by the decision on appeal. Although the petitioner denied its truth before the referee, her silence as to this damaging evidence at her trial weighs heavily against her in the present proceeding. She is now endeavoring to set aside the judgment of the court in finding her guilty on evidence undisputed by her at her trial and not discredited by any witness but herself before the referee. She had an opportunity to present at her trial what she now claims to be the truth, and declined to do so. She is thus in the position of withholding her testimony at her trial and reserving a case for her possible later release. This she may not do. (See *In re Manchester,* 33 Cal.2d 740, 742 [204 P.2d 881]; *In re Swain,* 34 Cal.2d 300 [209 P.2d 793].)

The petitioner has failed to prove false the testimony that

---

*The trial judge stated, ''In addition, the facts . . . establish that the defendant, while Miss Davis was visiting her . . . , sought to prevail upon her to have and accomplish an act of sexual intercourse with . . . an 'old customer', and when Miss Davis demurred . . . , the defendant further urged her to accept the proffered employment. . . . Thus it is quite plain that the acts of the defendant would have resulted in the commission of [pandering] but for the refusal of Miss Davis . . .'' (Reporter's Transcript on Appeal, p. 275, in *People* v. *Mitchell,* Crim. No. 4299, reported in 91 Cal.App.2d 214 [205 P.2d 101].)

established the elements of her crime and it becomes unnecessary to make any nice inquiry into the asserted perjuries as to other testimony. It is enough to say that Sergeant Stoker's testimony before the referee was alone sufficient, if believed, to support the referee's findings. The motives of Audrey Davis in testifying as she did before the grand jury served greatly to discredit her, and the testimony of Stoker before that body also reflected on her credibility.

In her exceptions to the findings of the referee the petitioner presents for the first time the point that the instructions embodied in the questions furnished by this court to the referee did not, but should have, contained a request for a determination as to whether any prosecuting official deliberately withheld information which would have been beneficial to the defense if it had been given. A sufficient answer is that nowhere in her petition for the writ of habeas corpus is it alleged that any prosecuting official withheld information that would have been beneficial to her cause. That question was not raised prior to the order of reference, nor was it presented on the hearing before the referee. It is not an issue in the case. Nevertheless it is asserted that there was a willful suppression of evidence by the state when Audrey Davis, called as a witness before the referee, refused to answer on the ground that her testimony would tend to incriminate her. As stated, Audrey Davis was called as a witness on behalf of the petitioner. Thus we have the unusual contention that the successful assertion by a defendant's witness of the constitutional protection against self incrimination is a willful suppression of evidence on the part of the state. The constitutional right is of course available to any witness, and the contention is groundless. Furthermore, it is impossible to conjecture what she would have said if she had testified before the referee. In other words, there is no way of knowing whether she would then have repudiated her testimony at the trial or her testimony before the grand jury.

The exceptions to the findings of the referee are overruled, and those findings are adopted as the findings of this court.

The writ is discharged and the petitioner is remanded to custody.

Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.