[Crim. No. 1852.   Fourth Dist.   Aug. 1, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. RENEE
CHARLES et al., Defendants and Appellants.

George L. Vaughn, Jr., for Defendants and Appellants.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Plaintiff and Respondent.

COUGHLIN, J.—By Count One in an information, the defendants Charles, and a third person named Mary Swann, were charged with an attempt to commit the crime of pandering, i.e., an attempted violation of section 266i of the Penal Code; by Count Two therein, were charged with conspiracy to commit the crime of pandering, i.e., a violation of section 182 of that code; and by separate allegations therein, the defendant Louis Charles also was charged with a prior felony conviction. What disposition was made of the charges against Mary Swann does not appear. The defendant Louis Charles admitted the prior conviction, but both he and defendant Renee Charles pleaded not guilty to the charges contained in Counts One and Two; were tried by a jury, which found them guilty of each offense as charged; were sentenced to imprisonment in the state prison; and appeal from the judgment entered.

The defendants seek a reversal on the grounds that (1) the evidence is insufficient to support the verdict finding them guilty of offenses charged in Count One; (2) the court erred in failing to give an instruction that they were presumed to be husband and wife; and (3) that an accumulation of errors in sustaining objections to the admission of evidence, the denying of motions to strike, and the rejection of requested instructions, was prejudicial.

### Sufficiency of the Evidence re Count One

The material allegations of the information in Count One charged the defendants with the "crime of Pandering (P.C. 266i (f)), committed as follows: The said Louis Charles, Renee Charles and Mary Swann . . . did attempt to procure a female person to become an inmate in a house of ill-fame within the State of California. . . :" ▉ Section 266i of the Penal Code defines the offense of pandering and, in part, declares that: "Any person who: (a) procures a female inmate for a house of prostitution; or (b) by promises, threats, violence, or by any device or scheme, causes, induces, persuades or encourages a female person to become an inmate of a house of prostitution; . . . or (f) receives or gives, or agrees to receive or give, any money or thing of value for procuring, or attempting to procure, any female person to become an inmate of a house of ill-fame . . . is. guilty of pandering, . . ."

The commission of any one of the acts described in the foregoing code section constitutes the offense of pandering; may involve the commission of other acts separately described therein; and, for this reason, a description of the one act may include the others. (*People* v. *Montgomery*, 47 Cal. App.2d 1, 23-26 [117 P.2d 437].) ▉ The terms "house of prostitution" and "house of ill-fame" are used synonymously. ▉ The statute endeavors "to cover all the various ramifications of the social evil of pandering and include them all in the definition of the crime, with a view of effectively combating the evil sought to be condemned." (*People* v. *Montgomery, supra,* 47 Cal.App.2d 1, 24.) ▉ The charge in the subject information that the defendants "did attempt to procure a female person to become an inmate in a house of ill-fame" clearly alleges an attempt to commit an offense defined by the statute; is included within the conduct of a person who "(a) procures a female inmate for a house of prostitution; or (b) by promises . . . or by any device or scheme, causes, induces, persuades or encourages a female person to become an inmate of a house of prostitution" (*People* v. *Montgomery, supra,* 47 Cal.App.2d 1, 9, 12; *People* v. *Wright,* 26 Cal.App.2d 197, 201 [79 P.2d 102]); and is adequately supported by the evidence hereinafter noted.

▉ On the night of January 2, 1962, two cocktail waitresses attending upon a bar were offered a ride home by the defendants Charles; accepted the offer; while en route were engaged in conversation respecting their income, as to whether they made any money off of the boys, to which they re-

plied: "No, just what we made in tips at the bar," and as to whether they "did anything on the side," which also brought a negative reply; and were told by the defendant Louis: "Well, we have a proposition for you. Maybe you will be interested in it . . . Maybe you will invite Renée into your house for a cup of coffee and you can discuss it, and then maybe you three can make arrangements and I could come down and pick you up and show you the setup." As requested, the two girls invited the defendants into their apartment and there were told that the defendant Renee Charles had a call house in Los Angeles County; that she needed call girls; that "it was a pretty good setup"; that if the girls lived in the house they would get a fifty-fifty split and if they lived out it would be forty-sixty; that they would meet, entertain and have intercourse with the trade at the house; that they could come and try it out and if they didn't make out too well in the first week they would be guaranteed $50 "for spending money." The defendants gave the girls a phone number; asked them to call if they were interested; and left. Thereafter, either or both of the defendants telephoned and talked to one or the other of the two girls on five different occasions during which the latter were urged to come and "try it"; were guaranteed "$50.00 a week anyway"; one was told by the defendant Louis Charles that he would come down and pick her up at any time of the day or night; and, on the last two calls, made arrangements for a meeting with both girls at their apartment. In the meantime the two girls had contacted the police, who arranged to be and were present at this meeting; were concealed from view; and heard what transpired. The three defendants arrived at the apartment premises by automobile driven by the defendant Louis Charles, who remained in the car, while the defendants Renee Charles and Mary Swann came inside. At this time the defendant Renee told about her place; about the kind of "dates" that the girls would be expected to accept; of her desire to get fresh faces for "the men"; about many intimate details associated with such an operation; and about the amount of money they would make. The interview ended when the police appeared and arrested the two women defendants. The man defendant was arrested later.

The evidence establishing the foregoing facts, although contradicted, fully supports the finding that the defendants attempted to procure the two waitresses as inmates of a house of prostitution. However, the defendants Charles con-

tend that because, in accusing them of the crime of "pandering" the information included in parentheses the designation "P.C. 266i (f)," the allegations of Count One are limited to the acts described in clause (f) of section 266i; that, as applied to this case, these acts relate only to the conduct of a proprietor of a house of ill-fame who agrees to pay another for "procuring, or attempting to procure" a female person to become an inmate of such a house; and that the evidence in the instant case does not establish the commission of such acts. The prosecution contends that the conduct described in clause (f) includes the making of an agreement to give a female person money for the purpose of procuring her or attempting to procure her to become an inmate of a house of ill-fame; and that the defendants were guilty of such conduct. This interpretation of the statute is without merit. ■ Pertinent portions thereof declare that any person who "receives or gives, or agrees to receive or give, any money or thing of value for procuring, or attempting to procure, any female person to become an inmate of a house of ill-fame . . . is guilty of pandering." These provisions of the statute are directed to the receipt or payment of, or agreement to receive or pay, money *for* "procuring" or "attempting to procure," and not *in* "procuring" or "attempting to procure"; are related to a transaction involving the receipt as well as the payment of money for procuring a female person to become an inmate of a house of ill-fame, which is without the scope of a transaction between the procurer and the female person who is the subject of such procurement; and contemplate, in substance, the employment of a person for "procuring" or "attempting to procure."
■ Nevertheless, the contention of the defendants must be rejected because, as noted, the information adequately sets forth the charge of attempted pandering by alleging an attempt to procure a female person to become an inmate of a house of ill-fame, and the reference therein to clause (f) of the subject code section did not negative that charge, and may be disregarded as immaterial. (*In re Culver*, 187 Cal. 437, 440 [202 P. 661]; *People* v. *Eppinger*, 105 Cal. 36, 38 [38 P. 538]; *People* v. *Aresen*, 91 Cal.App.2d 26, 36 [204 P.2d 389, 957].) The defendants did not demur to the information, or otherwise attack its sufficiency. Any defect therein attributable to ambiguity or uncertainty was waived and, in any event, did not result in a miscarriage of justice. (*People* v. *Cimar*, 127 Cal.App. 9, 15 [15 P.2d 166, 16 P.2d 139].)

The defendants further contend that the evidence is not sufficient to prove an attempt to commit the offense of pandering; shows only intention and preparation; does not show the existence of a house of prostitution and placement of the female therein, which, they claim, are necessary factors in proof of the offense charged; and, for this reason, the verdict is without support. ■ Proof of the existence of a house of prostitution in which the subject female person is to become an inmate, or of her placement therein, is not essential to establish an attempt to procure her as an inmate of such a house. (See *People* v. *Mitchell*, 91 Cal.App.2d 214, 217 [205 P.2d 101]; *People* v. *Benenato*, 77 Cal.App.2d 350, 357 [175 P.2d 296]; *People* v. *Grubb*, 24 Cal.App. 604, 608 [141 P. 1051].)

■ ''Pandering is established when the evidence shows that the accused has succeeded in inducing his victim to become an inmate of a house of prostitution. [Citations] ■ Attempted pandering is proved by evidence of the acts of the accused which have failed to accomplish the actor's purpose by reason of its frustration by extraneous circumstances rather than by virtue of a change of heart on the part of the one who made the attempt.'' (*People* v. *Mitchell, supra*, 91 Cal.App.2d 214, 217-218.)

■ Under the foregoing rule the refusal of the person solicited to accept the proposal to become an inmate of a house of prostitution is an extraneous circumstance which frustrates her procurement for such purpose. (*People* v. *Grubb, supra*, 24 Cal.App. 604, 608.)

■ An attempt to commit an offense is established by proof of a specific intent to do so and a direct, unequivocal act toward that end. (*People* v. *Gallardo*, 41 Cal.2d 57, 66 [257 P.2d 29].) ■ In the instant case the evidence shows that the defendants, by their promises to split the fees on a fifty-fifty basis, of a $50 guarantee, and to furnish transportation, by their telephone calls, by their visits, and otherwise, attempted to persuade and encourage the two waitresses to become inmates of a house of prostitution and would have succeeded in doing so except for the latter's refusal to participate in the proposed plan; thus proves that the defendants had a specific intent to commit the offense of pandering as described in clauses (a) and (b) of section 266i; establishes direct, unequivocal acts toward that end; and supports the verdict returned by the jury.

Refusal to Instruct on Presumption of Marriage.

The defendants Charles testified that they had been married in Tijuana, Mexico and were husband and wife. Mindful of this testimony, the court instructed the jury in conformance with the decisions in *People* v. *Miller*, 82 Cal. 107 [22 P. 934] and *People* v. *Keller*, 165 Cal.App.2d 419, 424 [332 P.2d 174], that a husband and wife are incapable of conspiring with each other, and for this reason may not be found guilty of a conspiracy, but that this rule applies only to persons who are validly married.[1] The prosecution introduced evidence which, if accepted by the jury, would have established that the defendants' purported marriage in Mexico did not comply with the laws of that country, and was void.

During a discussion in chambers, the trial judge intimated that he would not instruct the jury on the presumption declared by section 1963, subdivision 30, of the Code of Civil Procedure, *viz.*, that a man and woman deporting themselves as husband and wife are presumed to have entered into a lawful contract of marriage. Relying upon this intimation the defendants did not request such an instruction; the court gave none; and the defendants now contend that the failure to give such was error.

The evidence placed in issue the legality of the Tijuana marriage. The defendants related the circumstances attendant thereon. An expert testified that the circumstances thus related did not establish compliance with the requirements of Mexican law, and that the alleged marriage was void. He also testified that if certain papers purportedly establishing the fact of marriage had been recorded in the civil registry, the marriage would have been valid even though illegal because of a failure to comply with the requirements of the law. The defendants claimed that they had paid to have these papers recorded; inferred that they had received a copy of this record which had been burned; but made no effort to obtain another copy thereof.

The issues raised by this evidence concerned the validity of the defendants' marriage. They had gone through a mar-

---

[1] The rule that a husband and wife are incapable of conspiracy with each other was based on the concept that they are legally identical personalities (*People* v. *Miller*, 82 Cal. 107 [22 P. 934]), which no longer exists. (*Self* v. *Self*, 58 Cal.2d 683, 684-685 [26 Cal.Rptr. 97, 376 P.2d 65].) Modern authorities have rejected the rule. (*United States* v. *Dege*, 364 U.S. 51 [80 S.Ct. 1589, 4 L.Ed.2d 1563]; *People* v. *Martin*, 4 Ill.2d 105 [122 N.E.2d 245]; see 46 A.L.R.2d 1275 et seq.)

riage ceremony. The question presented by the testimony upon this subject was whether that ceremony effected a legal marriage. The defendants related what had occurred. This testimony established noncompliance with the law. Even though illegally performed, their marriage would have been valid if certain documents evidencing the same had been recorded. Relying on this rule, they introduced testimony which would have supported such a conclusion, if accepted by the jury. As the defendants introduced evidence upon the factual questions relating to the validity of their marriage, there was "neither necessity nor reason for indulging in any presumption upon that subject," even assuming the presumption in question was applicable. (*Paulsen* v. *McDuffie*, 4 Cal.2d 111, 119 [47 P.2d 709]; *Noble* v. *Key System, Ltd.*, 10 Cal.App.2d 132, 137 [51 P.2d 887].)

In any event, it is our opinion, after an examination of the entire record, including the evidence, that it is not reasonably probable that the verdict of the jury would have been different if an instruction on the presumption in question had been given. Under these circumstances, any error in failing to give such was not prejudicial. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].)

The evidence at hand adequately supports the contention that the defendants Charles were not validly married; that they conspired to commit the offense of pandering; that pursuant thereto they engaged in the overt acts alleged in Count Two of the information; and, thus, the charge against them therein was fully sustained. (*People* v. *Benenato, supra*, 77 Cal.App.2d 350, 356-357; *People* v. *Montgomery, supra*, 47 Cal.App.2d 1, 11.) The fact that they were not successful in effecting the object of their conspiracy is not a defense to the conspiracy charged. (*People* v. *Klinkenberg*, 90 Cal.App.2d 608, 635 [204 P.2d 47, 613]; *People* v. *Benenato, supra*, 77 Cal.App.2d 350, 357.)

### CUMULATION OF ALLEGED ERRORS

The defendants complain that the court erred in sustaining objections made to questions propounded by them; in denying motions to strike made by them; and in refusing to give some of their requested instructions. It is contended that these errors, which are described as "minor," because they are cumulative were prejudicial. We have reviewed the complaints in question, and find them to be without merit.

The questions to which objections were sustained either were argumentative in form, dealt with immaterial matters, or

involved a consideration of collateral issues, and properly were sustained. One line of questioning to which objections were sustained was directed toward proving that the two waitresses were prostitutes. ▪ Whether the female person procured for or encouraged to become an inmate of a house of ill-fame is "an innocent girl or a hardened prostitute of long experience" is immaterial to the issues raised by a charge of pandering. (*People* v. *Montgomery, supra,* 47 Cal.App.2d 1, 12.) ▪ The defendants claim, however, that they were entitled to show that the subject waitresses were prostitutes who had approached them seeking a change of placement for prostitution purposes, which was contrary to the story told by the waitresses; that the latter had denied being prostitutes; and that a showing to the contrary would impeach their credibility. Nevertheless, the proposed impeachment testimony was directed to an immaterial matter; opened up an extensive collateral issue; was an attempt to divert the attention of the jury from the determinable questions in the case by trying the prosecution witnesses; and the ruling of the court excluding such was proper.

The motions to strike either were based upon grounds not supported by the record; stated no grounds therefor; or involved insignificant matters. No prejudicial error appears in their denial.

▪ The defendants also contend that the court's refusal to give five of their requested instructions constituted error, but support this contention only with the general statement that the requested instructions should have been given. The failure to assert specific reasons in support of this contention justifies our disregarding the same. (*Guillory* v. *Godfrey,* 134 Cal.App.2d 628, 634 [286 P.2d 474].) However, we have reviewed the record in the light of the contention made; find that three of the instructions referred to properly were rejected as covered by those which were given; also find that the other two contained incorrect statements of the law, as applied to the instant case; and that for these reasons the instructions in question properly were rejected.

▪ As noted, Count One of the information charged an attempt to commit the offense of pandering. Instructions on the law respecting the elements essential to a conviction of an attempt to commit an offense were given. The jury, by their verdict, found the defendants guilty "as charged in Count One of the Information." However, by its judgment the court refers to the offense charged in Count One

as the crime of pandering, in violation of section 266i, clause (f), of the Penal Code; thus, incorrectly pronounced judgment for such crime instead of for attempting to commit such crime; and erred in so doing. However, no purpose would be served in reversing the judgment with instructions to pronounce judgment on the verdict as to Count One in accord with the views expressed herein, as the state prison sentences heretofore imposed by the existing judgment for the offenses charged in both Counts One and Two run concurrently. A modification of this judgment as to Count One correctly describing the offense with which the defendants were charged and convicted, will meet the ends of justice.

The judgment is modified so as to show that, as to Count One in the information, the defendants were charged with, convicted of and sentenced to imprisonment in the state prison for an attempt to commit the offense of pandering, *viz.*, an attempt to commit the crime described in section 266i of the Penal Code, and as so modified, is affirmed.

Griffin, P. J., and Brown (Gerald), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 18, 1963.