[Crim. No. 2539. Second Appellate District, Division One.—August 16, 1934.]

THE PEOPLE, Respondent, v. ART MARRON et al., Appellants.

Gladys Towles Root for Appellants.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

HOUSER, J. — Defendants were convicted on each of three counts of the crime of pandering, and on one count of the crime of conspiracy to commit the same offense. They appeal from the ensuing judgments that were rendered against them, as well as from an order by which their motion for a new trial was denied.

By the terms of the statute (Stats. 1911, p. 9) under which in part the defendants were prosecuted, it is provided that:

"Any person who shall procure a female inmate for a house of prostitution, . . . shall be guilty of a felony, to-wit: pandering, . . . "

In that connection, the first point presented in behalf of appellant Marron is that the statute "is too vague and indefinite to constitute the basis of a criminal charge . . . "; and in substance, the argument is restricted to the contention that because the phrase "house of prostitution" is not defined in the statute, no one is apprised of the nature of the crime that is intended to be denounced.

In the case of *Ferguson* v. *Superior Court,* 26 Cal. App. 554, 558 [147 Pac. 603], the word "prostitution" is defined as follows:

"Prostitution means common, indiscriminate, illicit intercourse for hire. It is the practice by a female in offering her body to an indiscriminate intercourse with men for money or its equivalent. . . . "

And in *People* v. *Mead,* 145 Cal. 505 [78 Pac. 1047], in effect it appeared that the house in question contained twelve rooms, commonly known as "cribs", each of which was occupied by a different woman as a place of prostitution for herself alone, and that the wife of the defendant occupied one of the rooms for that purpose. It was held that, "under the circumstances, defendant's wife was in a 'house of prostitution', within the meaning and intent of the statute under consideration, . . . The fact that the court instructed the jury that the house must ·be occupied by two or more women would not justify this court or the court below in granting a new trial because there was no proof that a particular room of the house was occupied by more than one woman, if the evidence was otherwise sufficient to justify the· verdict."

In *People* v. *Slater,* 119 Cal. 620, 622 [51 Pac. 957], it was contended that the trial court erred in amending a certain instruction that was given to the jury. In passing upon the question thus presented, the Supreme Court.said:

"The instruction, as requested, is as follows: 'If you find from the evidence that the house where the defendant took the girl is only a house where one woman lives, then I charge you that such a house is not a house of ill-fame.' The court added, 'unless it is used for the purposes of prostitution'. The amendment was pertinent and proper. A

house kept by one woman may be entirely respectable and the woman virtuous; but one woman may be unchaste and may keep a house of ill-fame to which others resort for purposes of prostitution.''

See, also: *People* v. *Ryberg*, 287 Ill. 195 [122 N. E. 545]; *Wilson* v. *State*, 17 Ala. App. 307 [84 So. 783]; *Pon* v. *Wittman*, 147 Cal. 280, 293 [81 Pac. 984, 2 L. R. A. (N. S.) 683]; and title ''House of Ill-fame'' in Third Revision of Bouvier's Law Dictionary, where respective authorities are cited which hold that a flat-boat with a cabin on it; a tent; one room of a steamship; or a single room; may constitute a house of ill-fame, which is synonymous with a house of prostitution. (See title in Words and Phrases, and authorities there cited.)

But aside from such decisions, it is common knowledge what is meant by the phrase. It is exceedingly doubtful that the meaning which is properly attachable to the expression is unknown to any adult, English-speaking person within the jurisdiction;—in consideration of which, together with the authorities to which attention has been directed, it must follow that the point advanced by appellant is wholly without merit.

■ Appellant Marron also urges the point that the evidence adduced on the trial of the action was insufficient to establish the fact that he ''procured'' either of the young women named as a victim of his nefarious business ''as an inmate of a house of prostitution''. In that regard, although it may be that the evidence fails to show that appellant personally ''procured'' either of such women, nevertheless the evidence is replete with positive facts in substance that knowingly, intentionally, with criminal intent, and with full knowledge of the nature of his acts and their attendant consequences, he aided and abetted in consummating the offense. Under the terms of section 31 of the Penal Code, ''all persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals''; from which it follows that appellant's point is not well taken.

■ Appellant Marron's third point is that because the several acts of prostitution of the victims named in the information occurred without the boundaries of Los Angeles

County, the court in that county was without jurisdiction to try the action against said defendant. It is undeniable that, according to the evidence adduced on the trial of the action, the offense was committed partly within Los Angeles County and partly within Kern County of this state. Such being the fact, a complete answer to appellant's contention is found in the terms of section 781 of the Penal Code, which provides that:

"When a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county."

■ Appellant Marron further complains of asserted error on the part of the trial court "in its failure to give", or in giving, to the jury several indefinitely specified instructions. Since no attempt is made by appellant to conform to the several rules of this court with reference to the presentation of such a specification of error, and particularly because neither argument nor authority is presented in support thereof, it is assumed that appellant is not serious in his suggestion in that regard.

■ Finally, appellant Marron urges the point that error prejudicial to him was committed by the trial court in the matter of the admission of evidence. But said appellant fails to direct attention to the particular evidence to which he objects. In such circumstances, it is not incumbent upon this court to search the record for the purpose of establishing the correctness of said appellant's blanket complaint.

The judgments and the orders by which the motion for a new trial was denied are affirmed.

Conrey, P. J., and York, J., concurred.