[Crim. No. 9435.   Second Dist., Div. Two.   July 27, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. KIM MARTIN, Defendant and Appellant.

Bazar & Epstein and Ira S. Epstein for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Defendant appeals from the judgment entered against her following a nonjury trial wherein she was convicted of the crime of pandering in violation of section 266i of the Penal Code.

The information upon which the prosecution was based charged defendant in substantially the same language found in subdivision (c) thereof, i.e., that defendant did procure an identified female person "a place as an inmate of a house of prostitution." This subdivision also proscribes the procuring for a female person a place "as an inmate of *any place* in which prostitution is encouraged or allowed within this State; . . . " (Italics added.)

██ Although defendant makes passing argument in support of her contention that certain evidence was obtained as the result of an illegal search and seizure, this assignment of error is so wholly devoid of merit that we may dispose of it in summary fashion. First, no objection to the evidence was made upon this ground in the trial court, and, therefore, error in its admission cannot be urged for the first time on appeal. ██ Secondly, no evidence was introduced which tended to indicate that the officers had no warrant for the arrest or search, and, in the total absence of any such evidence, it will be presumed on appeal that the arrest and search were lawful. ██ Finally, contrary to appellant's bald and unsupported assertion, a search incident to a lawful arrest is still legally permissible in California.

While defendant's second and primary assignment of error challenges the sufficiency of the evidence, it is clear that the only actual issue presented is the following: May a person be convicted of the crime of pandering when the acts of prostitution were committed in the prostitute's own apartment?

The evidence, which is essentially without conflict, establishes that a woman, hereafter referred to as "Mary," advised a male acquaintance that she was in urgent need of money to enable her to visit her child who was seriously ill in an eastern state. She knew from a prior incident that this man probably could secure her entree into the industry of the prostitute and she indicated her willingness to engage in that profession.

This man took her to the defendant's residence where she again expressed her need for money and her willingness "to work." Defendant told Mary, "You know that my cut—the cut is 60-40." Mary agreed to this whereupon appellant took her telephone number, asked her when she wanted to work and then told her that she would call her. She called Mary three times that day; told her on each occasion that she was sending a man over, described him and what he was going to do and how much he was going to pay.

Later that day, after Mary had performed an act of sexual intercourse with each of these men, she met with defendant and gave her the agreed share of the money received. Defendant told Mary that she would have more work for her, but Mary left town and performed no further services as a prostitute. At the time of defendant's arrest in her apartment several "trick books" were found.[1]

In her brief, appellant asserts that Mary "was not compelled in any way to go to a house maintained by the defendant and it is respectfully submitted that such evidence is required to support a conviction thereunder." ▮ If by this statement, appellant intends to indicate her belief that some form of mental or physical compulsion is a necessary element of the crime of pandering, such belief, of course, is

---

[1] In the vernacular of persons engaged in pimping, pandering, and acts of prostitution, the phrase "to work" means to engage in prostitution; "trick" refers to the man that engages in sexual acts with a prostitute; "trick book" is a book used to keep the names, sometimes the addresses, telephone numbers and the amounts of money that these "tricks" pay, and sometimes with a description of the "trick." These "trick books" are generally maintained by prostitutes, madams and pimps.

mistaken. The applicable law is stated in the following quotation from *People* v. *Montgomery,* 47 Cal.App.2d 1, 12-13 [117 P.2d 437] :

"Appellant also takes exception to the trial court's instruction to the effect that under the provisions of the pandering statute, if the evidence discloses that defendant acceded to the importunities of a wanton woman and at her request found her a place in a house of prostitution, the defendant is just as guilty of the offense of pandering as though he had induced her to become such an inmate by means of threats, violence or fraud. In this regard, appellant in his contentions misconstrues the meaning and application of the term 'procure' as used in the statute, and in fact misconstrues the entire purpose of the statute. It is immaterial whether the female 'procured' is an innocent girl or a hardened prostitute of long experience; nor is it material that the procurement was either at her request or upon the defendant's own initiative. In either case the defendant has 'procured' a female within the meaning of the act and is guilty of pandering. The instruction to which appellant here excepts correctly construed the pandering statute. [Citation.]"

▮ If, on the other hand, defendant is maintaining that the crime with which she is charged requires that the place in which the acts of prostitution occur must "be maintained" by her, she is equally mistaken. The statute makes no such requirement. ▮ Similarly, if appellant is asserting that a single apartment may not be a "house of prostitution" she is likewise in error. The statute encompasses any place where prostitution is encouraged or allowed, even if the place be a taxicab. (*People* v. *Nasworthy,* 94 Cal.App.2d 85, 91 [210 P.2d 83].) In *People* v. *Marron,* 140 Cal.App. 432, 435 [35 P.2d 610], it is declared that a house of ill fame may be a flatboat with a cabin on it, a tent, one room of a steamship or a single room and that a house of ill fame is synonymous with a house of prostitution. (See also, *People* v. *Courtney,* 176 Cal.App.2d 731, 739 [1 Cal.Rptr. 789], where one of the "places" of prostitution was the customer's apartment, and *People* v. *Head,* 146 Cal.App.2d 744, 750-751 [304 P.2d 761], where it was held that a husband could be convicted of the crime of permitting his wife to remain in a "house of prostitution" (Pen. Code, § 266g) although the "house" was their family residence and she was the only female practicing prostitution therein.)

While it may be true that the phraseology of the section is

more consonant with the old-fashioned houses of ill fame of the "crib house" variety (cf. *People* v. *Mead*, 145 Cal. 500, 505 [78 P. 1047]), the legislative intent is clearly to provide proscriptions against, and punishments for, those who would batten upon the weaknesses of others. ▮ Since the activities of the modern "madam" still fall within both the letter of the statute and its obvious intent, she is answerable thereto.

The fact that in this day of telephonic communications and rapid automotive travel the madam's "parlour" may be her own apartment equipped with telephone and "trick books," and the "cribs" of the mentally, morally or spiritually bankrupt girls from whose degradation she seeks to profit may be their private apartments spread throughout the city, renders her actions no less despicable or identifiable as pandering.

The judgment is affirmed. The appeal from order denying motion for new trial is dismissed.

Fox, P. J., and Roth, J., concurred.