[Crim. Nos. 11003, 11264. Second Dist., Div. Two. June 2, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPHINE HELEN OSUNA et al., Defendants and Appellants.

(Two Cases.)

Marshall S. Siff, under appointment by the Court of Appeal, and Burton Marks for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

FLEMING, J.—Pursuing a lead given them by the bartender, five Pasadena police officers from the vice bureau entered the Keg 'N' Kettle bar at 3 p.m. masquerading as conventioners from General Motors. At 3:30 p.m. they were approached by Josephine Osuna, who told them she had 22

girls in her employ and could send girls to their motel rooms for $100 each. An assignation was arranged for the same afternoon.

The five officers arrived at the Arroyo Motor Inn at 5 p.m. and went to separate rooms on the second floor. From his window Inspector Costigan saw James Dobbins arrive in a Chrysler automobile with Miss Osuna and Nancy Bentley, a woman who had been with Miss Osuna at the Keg 'N' Kettle bar earlier. From the driver's side Dobbins walked to the motel's restaurant bar with the two women, and during the next few minutes Dobbins and Miss Osuna went back and forth several times from the restaurant bar to a telephone booth.

Miss Osuna then went to Officer Moken's room and collected $100 from him, after which Nancy came into his room and disrobed. Nancy told him the girls had someone downstairs to protect them. Somewhat later Miss Osuna told Lieutenant Olsen her other girls had lost their way in Pasadena and had telephoned for directions and that she was leaving to meet them and escort them to the motel. Within a few minutes she and Dobbins drove off in the Chrysler with Dobbins at the wheel. A short time later they returned in two cars with two more women, Michele and Dorothy, and all four entered the motel's restaurant bar. Miss Osuna, Michele, and Dorothy went upstairs, while Dobbins walked back to his car and sat in the driver's seat. Michele was sent to Officer Downie, from whom Miss Osuna collected $100, and Dorothy was sent to Lieutenant Olsen, also for $100. Both women disrobed and indicated their readiness to perform sexual acts.

Meanwhile Miss Osuna put part of the money she had collected in a small white purse and went down to the Chrysler, where she passed her purse to Dobbins inside the car. After so doing, she returned upstairs, and about a minute later Dobbins went back to the bar. Upstairs in one of the rooms Miss Osuna told Sergeant Boyle she was going to be his girl, collected $100 from him, and then undressed. At that point she and the three other women in the motel were arrested. Two officers went to the motel bar where Dobbins was seated, but on seeing them Dobbins left the bar and went outside to his car where he was arrested. Miss Osuna's purse was found inside the locked glove compartment with $180 of police money in it. When Miss Osuna saw that Dobbins had been arrested, she said, ''You, too, huh?'' to which he replied, ''That's the way it goes, baby.''

The defendants were jointly tried by jury and convicted of

three counts of pandering (Pen. Code, § 266i) and of three counts of attempted pimping (Pen. Code, §§ 266h and 664). Both were placed on probation for three years, Dobbins to serve 60 days in the county jail and Miss Osuna to serve 30 days. Both have appealed, claiming insufficiency of evidence to support the conviction of Dobbins for attempted pimping and insufficiency of evidence to support the conviction of either defendant for pandering.

1. The evidence against Dobbins for attempted pimping was sufficient. Penal Code, section 266h, covers solicitation or receiving compensation for solicitation on behalf of a prostitute. Dobbins drove Miss Osuna and one of her prostitutes to the assignation at the Arroyo Motor Inn. With Miss Osuna he later drove to pick up two other prostitutes who had lost their way to the motel. Dobbins received and locked in his car a purse containing money which Miss Osuna had collected as payment for the services of the prostitutes brought by them to the motel. This evidence, in conjunction with the actual solicitation conducted by Miss Osuna, supported Dobbins' conviction for attempted pimping.

2. With respect to the charges of pandering, both Dobbins and Miss Osuna contend the evidence was legally insufficient to prove they had procured for a female person a place where prostitution was allowed or encouraged, because (a) no acts of sexual intercourse actually took place, and (b) there was no evidence that the Arroyo Motor Inn was a house of prostitution. On this point the defendants contend that the crime of pandering requires either proof of actual prostitution or proof that an establishment has been operated as a house of prostitution. When neither element is present, the defendants argue, the crime of pandering has not occurred.

We find this argument singularly specious. As to point (a), the supposed requirement that actual acts of prostitution take place, a complete answer is provided in the Attorney General's brief, which we quote: ''A market is a market when it is stocked, open and ready for business. It does not have to wait to assume its character until the first customer buys groceries and removes them from the market. In the instant case, the prostitutes were procured, ready for business, and money for their services had changed hands. The fact that there was no actual evidence that any of the officers took possession of the merchandise they had bought and paid for is immaterial to the crime of pandering. . . . Pandering . . . consists of either procuring a female for a

place of prostitution, or procuring a place for a prostitute where she can ply her trade. The pandering in this case were clearly completed crimes. The prostitutes were procured.''

 As to point (b), that the Arroyo Motor Inn was not shown to be a house of prostitution or a place where prostitution was encouraged, it is quite true that the operators of the motel did not solicit or encourage the use of their premises for purposes of prostitution, and that it would be improper to classify their motel as a house of prostitution. But Penal Code, section 266i, is not solely directed against the evils and practices of another day. As Mr. Justice Herndon said in *People* v. *Martin,* 228 Cal.App.2d 677, 680-681 [39 Cal.Rptr. 669] : ''While it may be true that the phraseology of the section is more consonant with the old-fashioned houses of ill fame of the 'crib house' variety (cf. *People* v. *Mead,* 145 Cal. 500, 505 [78 P. 1047] ), the legislative intent is clearly to provide proscriptions against, and punishments for, those who would batten upon the weaknesses of others. Since the activities of the modern 'madam' still fall within both the letter of the statute and its obvious intent, she is answerable thereto.

''The fact that in this day of telephonic communications and rapid automotive travel the madam's 'parlor' may be her own apartment equipped with telephone and 'trick books,' and the 'cribs' of the mentally, morally or spiritually bankrupt girls from whose degradation she seeks to profit may be their private apartments spread throughout the city, renders her actions no less despicable or identifiable as pandering.''

In short, the evil which is the target of the statute is not immunized from attack by modern plumage and fine feathers of a protective coloration.

We note that the statute is directed against any person who ''procures for a female person a place . . . as an inmate of any place in which prostitution is encouraged or allowed within this State . . .'' (Pen. Code, § 266i.) The essence of the crime is the placing of a female in a place in which prostitution is allowed or encouraged. In this case we do not think the force of the statute is limited to the encouragement of prostitution by the operator of the motel, but rather that it also encompasses encouragement by the person in temporary control of a room within the motel in which a female person has been placed for purposes of prostitution. In any given case encouragement of prostitution by the motel operator may or may not be a relevant factor. The important element is the encouragement provided by the one in immediate control of

the "place" in which the prostitute is installed, which, as other cases have pointed out, may be a private apartment, a taxicab, or a facility other than a dwelling house. (*People* v. *Nasworthy*, 94 Cal.App.2d 85 [210 P.2d 83] (taxicab); *People* v. *Martin*, 228 Cal.App.2d 677 [39 Cal.Rptr. 669] (prostitute's apartment); *People* v. *Courtney*, 176 Cal.App.2d 731 [1 Cal.Rptr. 789] (customer's apartment); *People* v. *Frey*, 228 Cal.App.2d 33 [39 Cal.Rptr. 49] (prostitute's hotel room); *People* v. *Vetri*, 178 Cal.App.2d 385 [2 Cal.Rptr. 795] (motel room); *People* v. *Head*, 146 Cal.App.2d 744 [304 P.2d 761] (family residence); *People* v. *Marron*, 140 Cal.App. 432 [35 P.2d 610] (a flatboat, a tent, a cabin in a steamship, a single room, each may constitute a house of prostitution).) The encouragement or permission of prostitution given by the one in immediate control of the "place" determines its character as a place of prostitution. For example, the operator of a fleet of taxicabs may have no intention of encouraging or allowing prostitution in any of its vehicles, but if one of its drivers uses a cab under his control for such purpose, then it becomes a place of prostitution within the meaning of the statute against pandering. The same principle applies to rented apartments, hotel rooms, motel rooms, furnished lodgings, private dining rooms, beach cabanas, house trailers, and other facilities susceptible of misuse for purposes of prostitution.

▆▆▆ The essence of the crime of pandering here was the placing of a female person in a place (the motel room) in which prostitution was encouraged. Miss Osuna procured three women from Hollywood and placed them in specific rooms of the Arroyo Motor Inn where prostitution was to be encouraged. Dobbins assisted Miss Osuna in bringing the women to the motel and allocating them to various rooms in the motel where prostitution was to be encouraged. This evidence provided clear and convincing proof of the crime of pandering.

3. Other points on appeal are without substantial merit. Conversations objected to by Dobbins were properly received in evidence subject to their being linked up by later proof of conspiracy. (*People* v. *Sica*, 112 Cal.App.2d 574, 584 [247 P.2d 72].) Instructions to the jury on conspiracy gave an adequate explanation of the law prohibiting concerted action for illegal purposes. Dobbins's motion for a new trial on newly-discovered evidence, i.e. Miss Osuna's declaration that he had no knowledge or connection with her activities at the

motel, was properly denied. Although Miss Osuna had not taken the stand at the trial, her declaration added nothing to the case that was new but merely repeated denials of wrongdoing already given under oath by Nancy Bentley and by Dobbins himself. Further denials would have been no more than cumulative evidence.

The judgments are affirmed.

Roth, P. J., and Herndon, J., concurred.