[Civ. No. 34176.   Second Dist., Div. Five.   June 11, 1969.]

GEORGE AGUILERA, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Max Solomon and Fred Kilbride for Petitioner.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Joel Paul Hoffman, Deputy District Attorneys, for Real Party in Interest.

REPPY, J.—Defendant was indicted by a Los Angeles County Grand Jury for the felony of pandering (Pen. Code, § 266i, subd. (d)). Defendant moved to set aside the indictment under section 995 of the Penal Code. The motion was denied. This petition for writ of prohibition followed.

The indictment alleges that: "[D]efendant, GEORGE AGUILERA, did . . . encourage Michelle Dupree [hereinafter Michelle], an inmate of a house of prostitution and other places in which prostitution is . . . allowed, to remain there as an inmate, by promises . . . and other . . . scheme."

Subparagraph (d) of section 226i is but one of several subparagraphs delineating various aspects of pandering. Although some of the other subparagraphs have been construed in appellate decisions, this one has not. Typically, the segment of the pandering law referred to has multiple verbs and prepositional phrases. Culling it down to the phraseology apposite to the charge and circumstances in this case, it reads as follows:

"any person who: . . . by promises . . . or by any . . . scheme . . . encourages an inmate of a house of prostitution, or any other place in which prostitution is . . . allowed, to remain therein as an inmate . . . is punishable by imprisonment. . . ."

The chief point of defendant in support of his petition is that the valid evidence presented to the grand jury shows only two uncompensated acts of solicitation by defendant on behalf of Michelle in that, although to a minor degree such acts encourage a prostitute to remain one (at least for the performance of those acts of prostitution), such solicitation having that type of incidental encouragement is covered by another code section which places such activity at the misdemeanor level. (§ 318, Pen. Code.) For the purpose of making a ruling in this review, we can concede a construction of Penal Code, section 266i, subdivision (d) which requires something more than one or two isolated uncompensated acts of solicitation in order to establish the requisite encouragement.

The following circumstances can be drawn from what we consider the valid parts of the testimony of Michelle at the grand jury proceedings:

There was a practice among those dealing in the business of

prostitution whereby persons in procuring positions (pimps) would enter into long-term and continuously functioning arrangements with certain prostitutes under which the prostitute could anticipate a series of remunerative referrals, some of which would lead to self-arranged repeat business. Michelle put it that the prostitute "belonged to the pimp"; she was his "old lady"; but she also indicated that many similar veiled terms are used to characterize this setup. Once girls are started in this type of prostitution, the experience is that they remain in it; they cannot get out of it. This certainly is the type of full blown encouragement at which the indicated segment of the pandering law is aimed, even under the construction which defendant urges should be followed.

Michelle was active in prostitution at the time defendant contacted her. Defendant knew this. Michelle identified her residence on Doheny Drive where she handled her customers. Defendant was the maitre d' at a deluxe restaurant in metropolitan Beverly Hills, a position and a place undoubtedly providing him with many contacts from well-to-do inhabitants in and visitors to the area seeking the sexual services which prostitutes provide. It is to be inferred that Michelle knew this and would be expected by defendant to appreciate the benefits to be derived from a liaison with him.

Defendant told Michelle that he could use her, and that he was going to send her some *customers*. Michelle, in her testimony, used the word "customer" to describe the persons to whom she sold her carnal services, and to whom the word "tricks" was applied in the vernacular. It is evident that Michelle, in her testimony, was simply recapitulating the gist of defendant's statement to her and was using the word "customer" with the same connotation as the more colloquial term, "trick."

At another time, shortly thereafter, when defendant told her he had a friend for her *to see* (a term, according to Michelle, meaning to have sexual intercourse with) defendant told her the more she took care of him (by way of a suitable "gift" now and then) the more he would take care of her.

The grand jury was at liberty to construe this combined reparteé as an invitation by defendant to Michelle to participate with him in an arrangement of the nature described. above. Although the word "use" was not specifically defined by Michelle, it is readily open to the construction of *use as my prostitute or as my old lady*. Michelle pointed out that different terms were employed in this regard. "They try to say it to you in a way that doesn't mean what it is. . . ."

When defendant made this proposal, Michelle said, "Fine." Also, when Michelle moved and got a new number, she called defendant and gave it to him. This evidence alone would meet the standard of reasonable cause applicable to grand jury indictments (*Cotton* v. *Superior Court*, 56 Cal.2d 459, 461-462 [15 Cal.Rptr. 65, 364 P.2d 241]; Pen. Code, § 939.8), in this case, reasonable cause to believe that defendant, by promises, encouraged Michelle, a prostitute, using her apartment for her activities, to continue to be a prostitute and to remain in (or utilize) her apartment for that purpose.

However, in addition, the initial followup of this encouragement was brought to the attention of the grand jury, which served to bolster the case. Michelle testified at the outset that "he [defendant] did send me two tricks that I saw." The "he-did-send" part of this testimony was a conclusion initially, but the substance supporting it followed and related back to it. Defendant telephoned Michelle "on these two tricks." This testimony is what might be termed "condensed narration." It carries with it the concept that identifying things were said by defendant about the two customers he had for Michelle. Further, defendant told her he had a friend he wanted her to "see." The inference is available that he said this as to each of the two "tricks" and was using the vernacular of the trade. Two "tricks" were handled by Michelle on February 13 and February 15, respectively. These two days could be reckoned as falling shortly after the call from defendant, since Michelle met the defendant in January (which could have been near the end of the month), moved, called him to give him the new telephone number, and then got the call back from him "on these two tricks." ▮ Michelle was asked by the deputy district attorney, "Were these people identified to you as the same persons that . . . [defendant] had told you he was sending over?" The answer was, "Yes." Defendant asserts that the answer, read in light of the question, is inadmissible hearsay. Construed one way this is true. Perhaps Michelle meant by her answer that someone other than defendant later gave her such information. This would involve hearsay unless it were the two customers themselves, in which case we would have the nonhearsay verbal act of the men saying that defendant had sent them, which would prove that they knew the defendant and would support an inference that he had sent them. However, another permissible interpretation is that by answering "yes" Michelle meant that she, herself, was able to identify the men from their

appearances as the ones defendant had described to her when he had called her ''on these two tricks.'' Thus, this was legitimate evidence, and it buttressed the *arrangement* evidence already discussed.

When we granted the alternative writ in this matter, we had some concern in our own minds as to whether the particular segment of the pandering law here involved is so worded that it cannot be applied with adequate certainty to the encouragement of a female to continue to practice prostitution in her own apartment. This is because the segment of the code section refers to the one encouraged as an *inmate* of a house of prostitution and speaks of encouraging her to remain such an *inmate*.

If her own apartment is regularly used by the prostitute for performing her acts of prostitution, it is a house of prostitution. (*People* v. *Martin*, 228 Cal.App.2d 677, 680 [39 Cal.Rptr. 669].) It can also be said to be a place where prostitution is allowed. It is not stretching the logic of the wording, considering the broad purpose of the entire code section (*People* v. *Charles*, 218 Cal.App.2d 812, 816 [32 Cal.Rptr. 653]), to say that it encompasses the concept of the prostitute allowing herself to engage in acts of prostitution in her own apartment. The use of the term ''inmate'' with reference to the one encouraged, does not require that the house be one of the conventional type of earlier days wherein a number of persons were housed and engaged in acts of prostitution. Keyed to the present-day convenience of the telephone and rapid vehicular transportation, which makes feasible and more attractive the use of the prostitute's own apartment (*People* v. *Martin, supra,* 228 Cal.App.2d 677, 681), this phraseology simply connotes that the one encouraged is a prostitute and that she is encouraged to continue to be one, using her own apartment, if that was her method of operation.

The petition for writ of prohibition is denied, the alternative writ discharged, and the case remanded to the superior court for further proceedings.

Stephens, Acting P. J., and Aiso, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied August 6, 1969. Peters, J., was of the opinion that the petition should be granted.