Filed 11/2/15 P. v. Conley CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B256914 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. NA092664) |
| JAMES CONLEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Tomson Ong, Judge. Affirmed as modified.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews, Stephanie A. Miyoshi and Tita Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

James Conley (defendant) appeals from convictions of multiple counts of pimping a minor, pandering a minor, lewd acts and human trafficking a minor, all involving the same two victims: E.D. and J.H.[1] He contends: (1) it was prejudicial error to admit evidence of an expert's opinion of defendant's guilt; (2) trial counsel was ineffective in failing to object to such evidence, and (3) because pimping and pandering by procuring J.H. when she was *over* the age of 16 (counts 8 and 9, respectively) are the same crimes as pimping and pandering by procuring J.H. when she was *under* the age of 16 (counts 6 and 7, respectively), the conviction on counts 8 and 9 must be vacated; and (4) the sentence violates Penal Code section 654 in two ways. In addition, the People concede that defendant's presentence custody credits were miscalculated. We modify the judgment and affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *J.H.*

J.H. was born in August 1994. From 2009 until she was arrested in 2012, J.H. was a prostitute and defendant was her pimp. Police discovered J.H.'s connection to defendant in May 2012, when a citation issued to J.H. for "loitering for prostitution" was found in defendant's car.

---

[1]    All undesignated statutory references are to the Penal Code. Defendant was charged by second amended information with pimping a minor *over* age of 16 (§ 266h, subd. (b)(1) (counts 1, 8)); pimping a minor *under* age 16 (§ 266h, subd. (b)(2) (count 6)); pandering a minor *over* age 16 (§ 266i, subd. (b)(1) (counts 2, 9)); pandering a minor *under* age 16 years of age (§ 266i, subd. (b)(2)) (count 7)); lewd act on a 14 year old (§ 288, subd. (c)(1) (counts 3, 4, 5); human trafficking a minor (§ 236.1, subd. (a)) (count 10)); and kidnapping J.H. for rape (§ 209, subd. (b)(1) (count 11)). Enhancements for prior convictions were also alleged (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i) & § 667, subd. (a)(1)).
    A jury found defendant not guilty of pimping E.D. (count 1) and of kidnapping J.H. for rape (count 11), but guilty on the remaining counts. Defendant admitted one prior conviction. We discuss the details of defendant's 36-year sentence elsewhere in this opinion.

J.H. recounted that she and her siblings lived with her drug-addicted mother when she met defendant in a telephone chat-room in January 2009.[2]  The next night, defendant took J.H. to a club in downtown Los Angeles where they had cocktails (J.H. used her mother's identification).  That night, they had sex in the backseat of the white Mercedes defendant was driving.  After awhile, J.H. was seeing defendant seven days a week.  He bought her gifts, took her to restaurants, clubs and house parties.  They had sex several times a week, usually in defendant's car, sometimes in a hotel room.  On two occasions, they had sex in defendant's room at his grandparent's home in Long Beach, while his grandparents were asleep.  J.H. thought defendant was her boyfriend.  About six months into their relationship, defendant hit J.H. for the first time.  It was in response to J.H. socializing with other men at a bar.

About three months after that, in September or October 2009, on the way home from a nightclub, J.H. answered affirmatively when defendant asked if she loved him.  Defendant told J.H. that, if she loved him, she would have sex for money with other men; the money she would earn would be for them both.  Defendant went on to explain the specifics of how to be a prostitute, including the prices to charge for different sex acts.  Because she was drunk and needed the money, J.H. thought it sounded like a good plan.  That first night, J.H. had sex for money with three different men.

J.H. "worked" for defendant seven days a week from that first day until she was contacted by detectives in December 2012.  Her days followed a pattern beginning with defendant picking her up at school or home and bringing her to the Luxury Inn Motel in Compton, where she changed out of her own clothes and into "sexy" clothes that defendant had purchased.  Defendant always gave J.H. two condoms and then drove her to various locations where she would get out of the car and wait for "dates."  Meanwhile, defendant would usually park nearby to watch her.  At the end of her working day, defendant brought J.H. back to the motel where she changed into her own clothes.  He

---

**2**      J.H. testified that she was 15 years old.  The record shows she was born in August 1994, hence, she would have been 14 years old.

then drove her home and waited outside while she changed clothes and, on school days, drove her to school.

Defendant laid down "rules" which J.H. tried to follow because she knew failure to do so would result in a beating. These rules included that J.H. had to continue working each day until she made $500. If she made the $500 minimum during the day, defendant sometimes allowed her to spend the night in the motel room.[3] But if she failed to make the minimum during the day, defendant would make her work through the night until she made the $500 minimum. Another rule was that J.H. had to give everything she earned to defendant. Although defendant would beat her if he found her in possession of any money, J.H. was able to secret some money, which she gave to her family. In addition to having sex for money, J.H. had to have sex with defendant several times a week.

Whether or not J.H. followed the rules, defendant beat her several times a week. The worst beating occurred when defendant thought J.H. might be leaving him for another pimp; on that occasion, defendant hit her, spit on her and kicked her "like a dog." Once, when J.H. tried to leave the motel room, defendant beat her up so badly she could not walk. During a beating in September 2011, J.H. told defendant to stop because she was pregnant; defendant responded that he did not care and continued to beat her. J.H. stayed with defendant because she and her family needed the money and because she believed he would follow through on his threats to hurt her family if she left. At the time, J.H. believed defendant when he told her he beat her because he loved her. At trial, she no longer believed him.

Defendant was arrested on May 7, 2012, when undercover Los Angeles police officers watching several prostitutes at a location known for its high incidence of street prostitution, saw defendant pull over in a blue Cadillac Escalade and two prostitutes get

---

[3]    On those occasions, there was sometimes more than one prostitute in the room. Over the three years J.H. was with defendant, she estimated that four other women worked for defendant at one time or another.

into the car.[4]  Police discovered a prostitution citation issued to J.H. in defendant's car and sexually explicit photographs of J.H. on defendant's cell phone.[5]

B.    *E.D.*

When E.D. was 16 years old, she ran away from home and an older friend introduced her to prostitution as a way to be self-supporting.  That friend acted as E.D.'s pimp until E.D. stopped working as a prostitute in October 2011.  E.D. met defendant for the first time on February 7, 2012.  At that time, E.D.'s best friend was 16-year-old Angela, whom E.D. knew from high school; E.D. knew that Angela worked as a prostitute.  That night, E.D. went to the motel in Compton where Angela lived, for what E.D. thought was to be a social evening.  When E.D. arrived at about 7:00 p.m., defendant was there.  Since there were only women's clothes in the room, E.D. assumed he did not live there.  After listening to music for awhile, Angela and defendant began snorting crystal meth; E.D. did not participate.  At about 9:00 p.m., defendant's demeanor suddenly changed.  He demanded that E.D. make $300 for him by 8:00 a.m. the next morning or be "chopped."  E.D. understood that defendant wanted her to act as a prostitute and if she did not earn $300 and bring it back to him that night, he would hit her.  Afraid of what defendant would do to her if she refused, E.D. did as defendant instructed.  E.D. had her first customer within 30 minutes but they were arrested before the transaction was completed.

On June 2, 2012, Long Beach Police Officer Satwan Johnson was part of a team that executed a search warrant at defendant's grandparents' home.  In defendant's bedroom, officers found women's shoes, high-end jewelry, cell phones, pornographic DVD's and other DVD's of films that glorified the "pimp lifestyle."

---

[4]    J.H. identified the Escalade as the vehicle defendant was driving when she was with him.

[5]    J.H. testified that defendant used the photographs to advertise J.H. on a prostitution website.

5

Johnson also testified as an expert on "human trafficking," which the Penal Code defines as the deprivation or violation of "the personal liberty of another with the intent to obtain forced labor or services . . . ." (§ 236.1, subd. (a).)[6] Johnson explained that when runaway females are enticed, seduced, manipulated or forced into prostitution, it becomes a human trafficking case. Johnson explained that pimps generally operate in three ways: (1) run a brothel house; (2) work the internet; or (3) walk the street, which is known as the "track." Sexually explicit photographs, like the ones of J.H. on defendant's cell phone, are commonly used by pimps to advertise on the internet. Similar to domestic violence cases, there is often a cycle of abuse and romance in the pimp/prostitute relationship. The pimp begins by making the female believe he is her boyfriend. After awhile, the pimp convinces her that working as a prostitute is a good way for her to make money for "them" and that doing what the pimp wants is a way to show her love for him. The pimp's goal is to get the woman on "automatic" because once she is on "automatic," she will do what her pimp wants without constant supervision. Even so, when the female is on the street waiting for "dates," the pimp usually stays nearby observing. And he will give the prostitute just a few condoms so that she will have to come back to him for more, at which time she will report what sex acts she has performed and turn over the money she has earned. The woman comes to understand that she cannot eat or sleep until she makes her quota. Without objection, Johnson testified that it was his opinion that "this is definitely a human trafficking case" and that E.D. and J.H. "fit the profile" of human trafficking victims. Also without objection, Johnson detailed how the evidence in this case supported his opinion.

A jury found defendant guilty of pimping E.D. while she was over age 16 (count 1), pandering E.D. while she was over age 16 (count 2), lewd acts upon J.H. while

---

[6]    " 'Deprivation or violation of the personal liberty of another' includes substantial and sustained restriction of another's liberty accomplished through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person, under circumstances where the person receiving or apprehending the threat reasonably believes that it is likely that the person making the threat would carry it out." (§ 236.1, subd. (h)(3).).

6

she was age 14 (counts 3, 4, 5), pimping J.H. while she was under age 16 (count 6), pandering J.H. while she was under age 16 (count 7), pimping J.H. while she was over age 16 (count 8), pandering J.H. while she over age 16 (count 9) and human trafficking J.H. while she a minor (count 10). Defendant timely appealed.

## DISCUSSION

### A. *Erroneous Admission of Evidence*

Defendant contends his conviction for pandering by procuring minors E.D. and J.H. (counts 2, 7 & 9), pimping J.H. (counts 6 & 8), and human trafficking J.H. (count 10) must be reversed because it was an abuse of discretion to admit into evidence the expert's opinion that this was a human trafficking case and E.D. and J.H. fit the profile of human trafficking victims (the challenged opinion evidence). He argues the challenged opinion evidence was inadmissible evidence of the expert's opinion of defendant's guilt. But defense counsel's failure to timely object to the admission of this evidence constitutes a forfeiture of the issue. (Evid. Code, § 353, subd. (a); see *People v. Dowl* (2013) 57 Cal.4th 1079, 1089; *People v. Doolin* (2009) 45 Cal.4th 390, 448.) However, our inquiry does not end here, because the failure to object is the basis of defendant's ineffective assistance of counsel contention. Accordingly, we turn next to that contention.

### B. *Ineffective Assistance of Counsel*

Defendant contends his conviction on counts 2, 6, 7, 8, 9 and 10 must be reversed because trial counsel was ineffective for failing to object to the challenged opinion evidence. As we shall explain, defense counsel should have objected to the inadmissible challenged opinion evidence, but defendant has failed to show the prejudice necessary to establish ineffective assistance of counsel.

### 1.     Standard of Review

To prevail on an ineffective assistance of counsel claim, a criminal defendant must show:  (1) trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) without counsel's errors, a different outcome was reasonably probable.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688; *People v. Waidla* (2000) 22 Cal.4th 690, 718.)  Unless there is no plausible or satisfactory reason for trial counsel's challenged act or omission, the appellate court cannot determine an ineffective assistance claim absent a showing on the record of the reasons for trial counsel's act or omission.  (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003; *People v. Kraft* (2000) 23 Cal.4th 978, 1068-1069.)  Failure to make an objection that has little, if any likelihood, of being sustained does not constitute ineffective assistance of counsel.  (*People v. Anderson* (2001) 25 Cal.4th 543, 587; *People v. Zavala* (2008) 168 Cal.App.4th 772, 780.)

Thus, for defendant to prevail here on his ineffective assistance of counsel claim, he must show a defense objection to the expert opinion testimony likely would have been sustained (i.e. that the evidence was not admissible), that there could be no plausible or satisfactory reason for counsel to not object to such evidence, and that a different result was reasonably probable if counsel had objected.  Defendant has failed to make that showing.

### 2.     The Challenged Opinion Evidence

After Johnson described in general the culture of pimps and prostitutes, the prosecutor engaged him in the following colloquy:

> "[THE PROSECUTOR]:  Have you formed an opinion as to whether or not the testimony you heard would be evidence of human trafficking? [*sic*]
>
> [THE WITNESS]:  Yes.
>
> [THE PROSECUTOR]:  What is that opinion?
>
> [THE WITNESS]:  That this is definitely a human trafficking case.

[THE PROSECUTOR]: Human trafficking case for which named victim?

[THE WITNESS]: Both of the victims. But in particular, J.H., you know, you have a young girl that was seduced and enticed into prostitution. [¶] It was a classic example of how a pimp would take a young girl and turn her into a prostitute. It is systematic. [¶] It is not rocket science. They use this systematic method. They all go in under the guise, meet them on party lines, chat lines, Facebook. [¶] They date them. Date them for awhile and turn around and say at some point, 'You need to make money for me.' "

The prosecutor next asked a series of questions specifying certain evidence and asking Johnson how that evidence supported his opinion that this was a human trafficking case. The colloquy continued:

"[THE PROSECUTOR]: And did these two young women fit the profile of someone being human trafficking?

[THE WITNESS]: Yes."

There followed another series of questions specifying certain evidence and asking how that evidence supported Johnson's opinion that E.D. and J.H. fit the profile of a human trafficking victim. The prosecutor concluded with the following:

[THE PROSECUTOR]: . . . [¶] Anything else factor into your opinion as to this being a case of human trafficking that you can think of besides what we talked about?

[THE WITNESS]: No."

3.   **Although the Challenged Opinion Evidence was Inadmissible and Trial Counsel's Failure to Object was Beneath the Standard of Care, Defendant Failed to Show Prejudice**

a.   <u>The evidence was not admissible and there was no tactical reason not to object</u>

Experts opinion evidence is limited to opinions related "to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the

9

trier of fact." (Evid. Code, § 801, subd. (a).) The expert may state the reasons for his opinion and the matter upon which it is based (Evid. Code, § 802), including matter made known to the expert at the hearing (Evid. Code, § 801, subd. (b)).

But an expert may not testify as to his or her opinion of the defendant's guilt of the charged crimes. This is " 'not because guilt is the ultimate issue of fact for the jury, as opinion testimony often goes to the ultimate issue. [Citations.] "Rather, opinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact. To put it another way, the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt." ' [Citations.]" (*People v. Vang* (2011) 52 Cal.4th 1038, 1048.) An expert may, however, respond to *hypothetical* questions that track the evidence in the case in which he or she is testifying. (*Ibid*.) "A hypothetical question asks the witness to assume certain facts are true and to give an opinion based on the assumed facts." (CALCRIM No. 332.)[7]

In distinguishing the difference between admissible expert opinion and inadmissible opinion of guilt in the context of crimes involving pimping, pandering and/or human trafficking, *People v. Leonard* (2014) 228 Cal.App.4th 465, is instructive. In *Leonard,* defendants Leonard and Walser were convicted of pimping and pandering, among other things. On appeal, Leonard challenged admission of expert testimony about the culture of pimping and pandering in general, as well as the expert's interpretation of Leonard's social media postings, and the victims' statements against Leonard. (*Id*. at p. 492.) Specifically, the expert described the ways pimps control the prostitutes who work for them, including different kinds of pimps (e.g. "finesse pimps" and "gorilla pimps"). (*Ibid*.) The prosecutor also asked the expert: "And have you, in your speaking with [victim], as well as reviewing the reports in this case and the cell phone examination and any other evidence, . . . have you formed an opinion as to what type of pimp [the defendant] is?" Answering affirmatively, the detective explained that the defendant started as a finesse pimp but developed into a gorilla pimp. Later, referencing this

---

[7]     CALCRIM No. 332 was given in this case.

10

testimony, the prosecutor asked the expert: " 'Relating with that subject area, did you see patterns of behavior in pimping in manipulation and control of women in the testimony you heard today?' " The detective answered affirmatively and explained that certain postings on the defendant's social media referenced pimping and prostitution and that the defendant's "style mimicked successful pimps." (*Ibid*.)

The Court of Appeal found the expert testimony "regarding what type of pimp Leonard was and what 'patterns of behavior in pimping' were shown in [the victim's] testimony could reasonably be interpreted as unhelpful comments on Leonard's guilt or innocence on the charge of pimping. [Citation.] The jury was as qualified as [the expert] to determine whether the evidence showed Leonard was acting as a 'gorilla pimp' or 'finesse pimp,' for example, after [the expert] had explained those terms. [Citation.]" (*Leonard, supra,* 228 al.App.4th at p. 412.) But it found the error harmless, reasoning the improper expert testimony was brief and the other admissible evidence of guilt was overwhelming. (*Id*. at pp. 493-494.)

Although it did not involve pimping and pandering, *People v. Spence* (2012) 212 Cal.App.4th 478, also offers guidance. The defendant in *Spence, supra*, was convicted of multiple counts of sexually assaulting a minor. A defense expert criticized the conclusions of the doctor who examined the victim. The prosecutor asked the doctor, "if someone by the name of [the victim] says that she was sexually assaulted by someone by the name of [the defendant], is there any evidence that you tested in this case that contradicts that story?" The appellate court agreed with the defendant that the question was an impermissible hypothetical based upon which the expert gave an impermissible opinion that the defendant was guilty. (*Id*. at pp. 508-509.) The "question seems to unduly focus upon [the defendant] as a presumptively guilty individual, and we disapprove of this form of questioning." (*Id*. at p. 510.) But the *Spence* court found "any error in allowing it was harmless. [Citations.] The expert testimony thus interpreting the laboratory test results was not the only proof of the charges, in light of D.'s own testimony, the evidence about the family circumstances, and admissions by [the defendant] about his acts of molestation, all of which could be evaluated by the jury.

11

[Citation.] There was no deprivation of due process in the manner of questioning this expert witness." (*Id*. at p. 510, citing *People v. Watson* 46 Cal.2d 818, 835–836.)

Here, there is no dispute that the general culture of pimps and prostitutes is sufficiently beyond common experience that expert opinion on these matters was admissible to assist the trier of fact. (See *Leonard, supra*, 228 Cal.App.4th at p. 492.) But the expert went beyond explaining the esoteric culture of pimps and prostitutes. The only reasonable interpretation of the expert's challenged opinions is that they were unhelpful comments on defendant's guilt or innocence of human trafficking. Like the jury in *Leonard*, the jury in this case was as qualified as Johnson to determine whether the evidence showed this to be a human trafficking case after Johnson explained how human trafficking fits into the culture of prostitutes and pimps, generally.[8] Other than arguing the evidence was not inadmissible, the People have not suggested, and we can conceive of no rational tactical purpose for trial counsel's failure to object. Accordingly, such failure fell below an objective standard of reasonableness. (*Cunningham, supra*, 25 Cal.4th at p. 100.)

The People's reliance on *People v. Lindberg* (2008) 45 Cal.4th 1, for a contrary result is misplaced. The defendant in *Lindberg* was found guilty of first degree murder; several special circumstances were found true, including the hate-murder crime special circumstances. (§ 190.2, subd. (a)(16) ["The victim was intentionally killed because of his or her race, color, religion, nationality or country of origin."].) Our Supreme Court rejected the contention that the trial court abused its discretion in allowing an expert to opine that the defendant was a White supremacist, reasoning: "The expert stated no opinion as to defendant's guilt or the truth of the special circumstances. His opinion that

---

**8**     We are not persuaded otherwise by the People's argument that Johnson's testimony did nothing more than define for the jury terms of art common to that culture and explain the significance of specific evidence such as defendant driving a Cadillac Escalade, wearing flashy jewelry, etc. This would have been true had the prosecutor asked the questions in the form of a hypothetical. What the prosecutor could not do, which he did do, was to ask the expert to give his opinion as to defendant's actual guilt or innocence of the charged crimes.

12

defendant was a White supremacist did not bind the jurors on this point or preclude them from considering other relevant evidence." (*Lindberg,* at p. 49.) *Lindberg* is distinguishable because the defendant in *Lindberg* was not charged with being a White supremacist and, accordingly, the expert's opinion that he was a White supremacist could not reasonably be construed as an opinion of the defendant's guilt. Here, by contrast, defendant was charged with human trafficking and the expert's opinion that this was a human trafficking case and E.D. and J.H. were human trafficking victims, can only reasonably be construed as an opinion that defendant was guilty of human trafficking.

### b. Defendant has not established prejudice.

Although we conclude the challenged opinion evidence was inadmissible and defense counsel should have objected, defendant has failed to show the prejudice necessary to establish ineffective assistance of counsel. This is because conviction on all counts was supported by overwhelming admissible evidence of defendant's guilt. J.H.'s description of the threats and actual beatings defendant inflicted on her if she did not give him all of her earnings, when he thought she might be going to another pimp and on at least one occasion to prevent her from leaving the motel room, constitutes overwhelming evidence that defendant used force, violence, menace and threats to deprive her of her liberty with the intent to force her to work as a prostitute. In other words, there was overwhelming admissible evidence that defendant was guilty of human trafficking.

Although the challenged opinion evidence did not expressly refer to pimping or pandering, but only to human trafficking, defendant contends it was an inadmissible opinion of defendant's guilt on those charges, as well. Even assuming this is so for the sake of argument, there was overwhelming admissible evidence that defendant was guilty of those charges. Pandering is the knowing and purposeful conduct of encouraging or otherwise influencing another person to become a prostitute. (*People v. Zambia* (2011) 51 Cal.4th 965, 972, fn. 5, 980; § 266i, subds. (a)(1), (2).) E.D.'s and J.H.'s testimony constituted overwhelming evidence that defendant encouraged them to become prostitutes. Pimping is the deriving of support from another person's prostitution.

13

(§ 266h, subd. (a).) J.H.'s testimony constitutes overwhelming evidence that defendant derived support from her prostitution.

On this record, it is not reasonably probable a result more favorable to defendant would have been reached on any of the charges in the absence of Johnson's opinion that this is a human trafficking case and that E.D. and J.H. are human trafficking victims.

c.      Defendant was Properly Convicted of Pimping and Pandering a Minor Both Under 16 and Over 16 Years of Age

Defendant was convicted of both pimping and pandering J.H. when she was *under* 16 years of age in violation of section 266h, subdivision (b)(2) [pimping] and section 266i, subdivision (b)(2) [pandering] (counts 6 and 7, respectively). He was also convicted of both pimping and pandering J.H. when she was *over* 16 years of age in violation of section 266h, subdivision (b)(1) [pimping] and section 266i, subdivision (b)(1) [pandering] (counts 8 and 9, respectively). Defendant contends his convictions on counts 8 and 9 must be vacated because both pimping and pandering are crimes of a continuing course of conduct which cannot support separate convictions.[9] Defendant is incorrect.

"In general, a person may be convicted of, although not punished for, *more than one crime* arising out of the same act or course of conduct." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227, italics added, citing § 954.) But a person may not be subject to

---

[9]      The People contend defendant forfeited this claim by failing to demur to the complaint pursuant to section 1004, subdivision (5) [defendant may demur to accusatory pleading when it appears on the face of the complaint that "it contains matter which, if true, would constitute a legal justification or excuse of the offense charged or other legal bar to the prosecution."]. The People are incorrect. "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense . . . ." (§ 954.) Defendant's contention is not that it appears upon the face of the complaint that his actions were legally justified or excused, or that there was any bar to *prosecution* under both subdivisions (b)(1) and (b)(2) of the pimping and pandering statutes. Defendant's contention is that he could not be separately *convicted* of violating both subdivisions during a single course of conduct.

14

multiple convictions for the *same crime* arising out of a single course of conduct. (*People v. Lewis* (1978) 77 Cal.App.3d 455, 461.) Thus, the issue presented by defendant's contention is whether pimping and/or pandering a minor under 16 years of age is *the same crime* as pimping and/or pandering a minor over 16 years of age. As we shall explain, they are not.

Pimping is defined in section 266h, subdivision (a) and pandering is defined in section 266i, subdivision (a).[10] Violation of both section 266h, subdivision (a) [pimping] and section 266i, subdivision (a) [pandering] are crimes of a "continuous, ongoing nature." (*Leonard, supra,* 228 Cal.App.4th at p. 489 [pandering]; *Lewis, supra*, 77 Cal.App.3d at p. 461 [pimping].)[11]

But neither *Leonard* nor *Lewis* involved a minor victim victimized both before and after her 16th birthday and therefore neither is particularly helpful here. This is because defendant was charged under subdivision (b) of both statutes, not subdivision (a). Subdivision (b) of both section 266h and section 266i describes a different crime than subdivision (a). The general pimping and pandering crimes are described in subdivision (a) of each statute. By contrast, subdivision (b) of each statute makes it a separate crime to pimp and/or pander a *minor* (§ 266h, subd. (b) [pimping], § 266i, subd. (b) [pandering].) Further, subdivision (b) of both statutes distinguishes between pimping and/or pandering a minor *under* 16 years of age and one that is *over* 16 years of age by

---

**10**    Subdivision (a)(1) through (6) of section 266i defines different circumstances under which the crime of pandering may be committed, not six different crimes. (*People v. Lax* (1971) 20 Cal.App.3d 481, 486.) In this case, the circumstances alleged were "procuring" in violation of subdivision (a)(1).

**11**    As such, a defendant cannot be convicted of more than one offense of pimping and one offense of pandering when the offenses are part of a single course of conduct, even if that occurs over a long period of time. (*Leonard* at p. 489.) It is the single course of conduct element that distinguishes *Leonard* from *People v. DeLoach* (1989) 207 Cal.App.3d 323, in which, based on evidence showing two distinct acts of pandering, separated in time by several months, with no pandering conduct intervening, the Court of Appeal held multiple convictions were proper.

providing greater mid and high term sentences when the minor is under 16 years of age.[12] Thus, the age of the minor victim is an element of the crimes of pimping a minor in violation of section 266h, subdivisions (b)(1) and (2) and pandering a minor in violation of section 266i, subdivisions (b)(1) and (2).  (See e.g. *People v. Alvarado* (2001) 87 Cal.App.4th 178, 195 [where age is element of crime, it cannot also be used as aggravating factor in sentencing]; *People v. Quinones* (1988) 202 Cal.App.3d 1154, 1159, disapproved on other grounds in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12.) [same].)  Thus, subdivisions (b)(1) and (2) of sections 266h and 266i define *different crimes* depending on the victim's age, not the same crime.  A perpetrator cannot escape criminal liability for the separate crimes of victimizing a minor under 16 years of age and a minor over 16 years of age by beginning the victimization when the minor is under 16, and continuously victimizing the same minor until he or she turns 16.

        d.      <u>Section 654</u>

Defendant's 36-year prison sentence included, in relevant part, a base term of 16 years (the eight year upper term doubled pursuant to Three Strikes) on count 10 (human trafficking); plus a consecutive 4 years (one third the six year midterm (2 years) doubled pursuant to Three Strikes) on count 6 (pimping J.H. while she was under 16); plus a consecutive 4 years (one third the six year midterm (2 years) doubled pursuant to Three Strikes) on count 7 (pandering J.H. while she was under 16).  He contends section 654 proscribed multiple punishments on counts 6 and 7 and counts 6 and 10.[13]

---

**12**    If the victim is 16 years of age or older, each crime is punishable by imprisonment in the state prison for three, four, or six years.  (§ 266h, subd. (b)(1) [pimping]; § 266i, subd. (b)(1) [pandering].)  If the victim is *under* 16 years of age, each crime is punishable by three, six or eight years.  (§ 266h, subd. (b)(2) [pimping]; § 266i, subd. (b)(2) [pandering].)

**13**    At the sentencing hearing, defense counsel argued that section 654 applied to all counts.  On appeal, he argues only that section 654 proscribes separate sentences on counts 6 and 7 and 6 and 10.

16

We agree that section 654 proscribes separate sentences on counts 6 and 7, but disagree as to counts 6 and 10.

Section 654 provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) It "prohibits multiple punishment for a single physical act that violates different provisions of law." (*People v. Jones* (2012) 54 Cal.4th 350, 358.) But for purposes of section 654, "an act" may include a course of conduct. (*People v. Chung* (2015) 237 Cal.App.4th 462, 467.) Thus, section 654 precludes "multiple sentences where the defendant commits different acts that violate different statutes but the acts comprise an indivisible course of conduct engaged in with a single intent and objective. [Citation.]" (*Alvarado, supra*, 87 Cal.App.4th at p. 196.) The divisibility of a course of conduct depends on the " ' " 'intent and objective' of the actor." [Citation.]' [Citation.]" (*People v. Archer* (2014) 230 Cal.App.4th 693, 704.) Intent and objective are factual questions, the trial court's determination of which we review for substantial evidence. (*Chung* at p. 469; *People v. Petronella* (2013) 218 Cal.App.4th 945, 964.)

> **1. Defendant's acts of *pimping* J.H. when she was *under* 16 years of age (count 6) and *pandering* J.H. when she was *under* 16 years of age (count 7) was a single course of conduct within the meaning of section 654**

The trial court found section 654 inapplicable to pimping and pandering as charged in counts 6 and 7, reasoning that they are different crimes: "The acts are different. The elements are different. And the time in which one pimps and the time in which one panders are different time periods." The trial court is correct that pimping and pandering are different crimes, but incorrect in its conclusion that this fact makes section 654 inapplicable.

Pandering is, among other things, the procuring of another person for the purpose of prostitution. (§ 266i, subd. (a)(1); *People v. Dixon* (2011) 191 Cal.App.4th 1154, 1156

17

[a panderer is " ' "one who procures the gratification of the passion of lewdness for another." ' [Citation.]"].) It requires no monetary gain. (*Aguilera v. Superior Court of Los Angeles County* (1969) 273 Cal.App.2d 848.) By contrast, pimping is the deriving of support from another person's prostitution. (§ 266h, subd. (a).) "It is necessarily part of the aim, objective and intent of a panderer that the person who is the object of the pandering become a prostitute. . . ." (*DeLoach, supra,* 207 Cal.App.3d at p. 337.) But it is not an element of pandering that the panderer receives remuneration directly from the prostitute. For example, in *Aguilera, supra*, evidence that a maitre d' at an expensive restaurant referred customers to a prostitute was sufficient to support a charge of pandering against the maitre d'. Because the crimes have different elements, it is "possible to commit one offense without committing the other." (*Zambia, supra,* 51 Cal.4th at p. 981, fn 7.) But that is not the test for applicability of section 654 – an issue the *Zambia* court did not address because the defendant in that case was convicted of only a single count of pandering. The test is whether the defendant's acts constituted a single course of conduct, during which the defendant had a single intent and objective, which resulted in violation of different statutes. (*Alvarado, supra*, 87 Cal.App.4th at p. 196.) If so, sentence may be imposed on only the count providing for the longest potential term of imprisonment; sentence on the other count must be stayed.[14]

The only reasonable inference from the evidence in this case is that defendant engaged in a single course of conduct of pimping and pandering for which he had but one intent and objective: procuring J.H. for the purposes of prostitution so that he could derive support from her prostitution. As such, section 654 precluded separate sentences on counts 6 and 7.

---

[14] The gist of the discussion between defense counsel and the trial court was whether section 654 required *concurrent* sentences. In fact, if section 654 is applicable, the defendant must be sentenced under the "provision that provides for the longest potential term of imprisonment" and sentence on the other count must be stayed.

18

**2.  Section 654 does not preclude multiple sentences for pimping J.H. when she was under 16 years of age (count 6) and human trafficking J.H. when she was a minor (count 10)**

We do not reach the same conclusion with respect to the convictions on counts 6 and 10.  This is because the evidence showed defendant pimped J.H. for the first time in September or October 2009.  On that occasion, J.H. agreed to defendant's proposal that she sleep with men for money.  Defendant did not, in the beginning of his pimp/prostitute relationship with J.H., use force to violate her personal liberty with the intent of obtaining her forced labor or services.  It is unclear when, exactly, defendant began using such force.  Other than the beating that occurred in September 2011 when she was pregnant, J.H. does not state the date on which defendant beat her to keep her from switching pimps, or the date he beat her to keep her from leaving the motel room.  But a reasonable inference from the record is that these violations of J.H.'s personal liberty occurred later in their relationship and certainly did not co-exist during the entirety of the pimping relationship.  At the point defendant began using violence to restrict J.H.'s personal liberty, defendant began a new criminal transaction – human trafficking.  Under these circumstances, section 654 does not preclude separate sentences on counts 6 and 10.

### DISPOSITION

The judgment is modified as follows:  (1) the term imposed on count 7 is stayed pursuant to section 654 pending completion of the term imposed on count 6, the stay then to become permanent; and (2) to reflect 828 days of presentence custody credits based on the People's concession, comprised of 720 days in actual custody and 108 days of good conduct/work credits.  The superior court is directed to prepare an amended abstract of

19

judgment and to send a certified copy to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.

FLIER, J.

20